Argued and submitted September 8, 2003, decisions of the Court of Appeals affirmed; case of *Trujillo v. Pacific Safety Supply* remanded to Workers' Compensation Board for further proceedings January 29, reconsideration denied April 27, 2004

In the Matter of the Compensation of
Consuelo Trujillo, Claimant.

Consuelo TRUJILLO,
*Petitioner on Review,*

*v.*

PACIFIC SAFETY SUPPLY
and SAIF Corporation,
*Respondents on Review.*

(WCB 96-10056; CA A99410; SC S49592)

In the Matter of the Compensation of
Terry G. Logsdon, Claimant.

Terry G. LOGSDON,
*Petitioner on Review,*

*v.*

SAIF CORPORATION,
*Respondent on Review.*

(WCB 99-00431; CA A109321; SC S49594)

In the Matter of the Compensation of
Cindy M. Mount, Claimant.

Cindy M. MOUNT,
*Petitioner on Review,*

*v.*

DEPARTMENT OF CONSUMER AND
BUSINESS SERVICES
and SAIF Corporation,
*Respondents on Review.*

(WCB 97-08823; CA A103636; SC S49645)
(Consolidated for Argument and Opinion)

84 P3d 119

Max Rae, Salem, argued the cause and filed the briefs for petitioners on review Trujillo and Logsdon.

Christopher D. Moore, of Malagon, Moore & Jensen, Eugene, argued the cause and filed the brief for petitioner on review Mount.

David L. Runner, Appellate Counsel and Special Assistant Attorney General, Salem, argued the cause and filed the briefs for respondents on review. With him on the briefs for

respondents on review Department of Consumer and Business Services and SAIF Corporation (S49645) were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

G. Duff Bloom, Eugene, filed a brief for *amici curiae* Oregon Trial Lawyers Association, Legal Aid Services of Oregon, Oregon Advocacy Center, and Oregon Law Center.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

GILLETTE, J.

** Kistler, J., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

In these three workers' compensation cases, which this court has consolidated for review, claimants assert a constitutional right to present new evidence at a hearing before an administrative law judge (ALJ) of the Workers' Compensation Board (board), on review of a Department of Consumer and Business Services (department) order on reconsideration, notwithstanding a statutory prohibition on the admission of such evidence. In each case, a divided, en banc Court of Appeals ruled, based on this court's decision in *Koskela v. Willamette Industries, Inc.*, 331 Or 362, 15 P3d 548 (2000), that claimants have no such constitutional right. *Trujillo v. Pacific Safety Supply*, 181 Or App 302, 45 P3d 1017 (2002); *Logsdon v. SAIF*, 181 Or App 317, 45 P3d 990 (2002); *Mount v. DCBS*, 181 Or App 458, 46 P3d 210 (2002). We allowed review in these cases primarily to address claimants' constitutional arguments. However, for the reasons that follow, we conclude that we are unable to reach those arguments in any of the cases because, in each case, the claimant failed to exhaust his or her administrative remedies. Accordingly, we affirm each of the decisions of the Court of Appeals, albeit for different reasons.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts relevant to each of the claimants' challenges are undisputed.

### A. *Trujillo v. Pacific Safety Supply*

Claimant Trujillo compensably injured his neck, shoulders, and chest in October 1995. Trujillo's employer accepted his claim in December 1995. In June 1996, after Trujillo became medically stationary, the insurer issued a notice of closure, awarding Trujillo 16 percent unscheduled disability. A worksheet attached to the notice indicated that claimant's preinjury capability, or "base functional capacity" (BFC), was light and that his post-injury capability, or "residual functional capacity" (RFC), also was light.[1] That was

_____

[1] OAR 436-035-0310(3)(a) defines BFC as "an individual's demonstrated physical capacity before the injury or disease." OAR 436-035-0310(3)(b) defines RFC as "an individual's remaining ability to perform work-related activities despite

important, because the characterization of Trujillo's BFC and RFC would affect the amount of compensation that Trujillo could receive for his permanent injury.[2]

Trujillo requested reconsideration. During the reconsideration process, Trujillo sought to prove that his BFC was heavier than the notice of closure designation of "light." Under the department's rules, BFC is determined by "[t]he highest strength category of the job(s) successfully performed by the worker in the five (5) years prior to the date of injury." OAR 436-035-0310(4)(a).[3] The strength categories, in turn, are found in the department's "Dictionary of Occupational Titles" (DOT). *Id.*

Trujillo filled out and submitted to the department a several-page form entitled "Work History." That form asked the claimant to "list all jobs for the last 10 years." Among other things, the form specifically requested job titles, job duties, and dates of employment for all jobs. On that form, Trujillo described his job at the time of the injury, along with the duties of that job. In addition, under a heading "Previous Job," Trujillo stated that he had been a seasonal "canning line worker" from July 1994 until January 1995 and described his duties there as "help with canning line."

Elsewhere on the form, under the heading "Additional Work History Prior to Injury," Trujillo stated, "Other

---

medically determinable impairment resulting from the accepted compensable condition."

[2] The amount of compensation that an injured worker receives for a permanent injury depends on the extent of the disability caused by the injury. ORS 656.214(5). The extent of disability, expressed as a percentage, depends in turn on the seriousness of the injury, "as modified by factors of age, education and adaptability to perform a given job." ORS 656.726(4)(f)(A). Adaptability, under the department's rules, is determined by comparing the worker's ability to perform work before and after the injury or, in the wording of the rules, by comparing the worker's BFC with his or her RFC. OAR 436-035-0310(2). The department provides formulas for expressing the modifying factors as numbers. A high number adds to the extent of disability, which, in turn, adds to the injured worker's compensation.

[3] The ALJ and board orders in the Trujillo case refer to the version of the Oregon Administrative Rules that was in effect at the time of claim closure in 1996. Likewise, the ALJ and board orders in the Logsdon and Mount cases refer to the versions of the Oregon Administrative Rules that were in effect when the claims in each of those cases were closed. The rules have been amended in the interim, in some instances multiple times, but not in ways that are pertinent to our disposition of these cases. Therefore, unless otherwise noted, all references to the Oregon Administrative Rules in this opinion are to those rules currently in effect.

jobs include picking fruits and berries, tending and trimming berries, nursery work including grafting, and harvesting Christmas trees." Trujillo did not provide relevant dates or a specific list of duties for any of those other jobs. In addition to the foregoing, Trujillo submitted an affidavit in which he provided a list of the tasks that he performed in the course of the job that he held when he was injured. Although he specified the types of objects that he was required to lift on the job, along with the weights of those objects, he did not specify the frequency with which he was called upon to perform those tasks, other than to state, "[A]ll work repetitive."

The other evidence before the department on reconsideration was a job analysis of Trujillo's regular position that the employer submitted to Trujillo's doctor for his review and approval for purposes of releasing Trujillo to work. That analysis listed the weights that the job required Trujillo to lift, along with the frequency with which it required Trujillo to perform those tasks.

On reconsideration, the department upheld the notice of closure.

Trujillo requested a hearing. At the hearing, Trujillo requested the opportunity to testify personally to supplement the reconsideration record, claiming that he had a constitutional right to do so. The ALJ denied that request, concluding that ORS 656.283(7) precluded the admission of evidence that was not in the reconsideration record[4] and rejecting Trujillo's constitutional arguments. Trujillo then made an offer of proof to the effect that he would have testified concerning, among other things, the frequency with which he performed the various lifting requirements of his job at the

---

[4] ORS 656.283(7) provides, in part:

"Evidence on an issue regarding a notice of closure that was not submitted at the reconsideration required by ORS 656.268 is not admissible at hearing, and issues that were not raised by a party to the reconsideration may not be raised at hearing unless the issue arises out of the reconsideration order itself."

At the time that the claims of claimants in these consolidated cases were closed, ORS 656.283(7) referred to "[e]vidence on an issue regarding a notice of closure or determination order * * *." The 1999 Legislative Assembly deleted the reference to determination orders in ORS 656.283(7) at the same time that it amended the statutes to provide for claim closure exclusively by notice of closure. *See, post,* 336 Or at 359 n 10.

time of his injury and the duties and time frames for the jobs that he had performed in the five years before the injury.

Based on the written reconsideration record, including Trujillo's affidavit and work history forms, the ALJ increased Trujillo's award to 21 percent permanent partial disability.

Trujillo then petitioned for board review of the ALJ's order. The board affirmed the ALJ's decision to exclude the oral testimony. In addition, as pertinent here, the board reviewed the written reconsideration record and purported to conclude that Trujillo's BFC was "light."[5] In reaching that conclusion, the board considered only the job that Trujillo held at the time of his injury and the cannery worker job. The cannery worker job, according to the DOT, has a strength rating of "light." The board declined to consider Trujillo's jobs as fruit picker, vine pruner, or Christmas tree farmer, because Trujillo had failed to offer evidence to the department during reconsideration that he had performed any of those jobs within the relevant time frame.

Turning to the job that Trujillo held at the time of his injury, the board began by rejecting Trujillo's contention that that job fell in the DOT category of "Lumber Handler," with a strength rating of "heavy." The basis for the board's decision in that regard was that the DOT description of the duties of the job of "lumber handler" did not match the description of the job duties that Trujillo actually performed, as described in his own affidavit. In the board's view, Trujillo's description of his duties more closely resembled the DOT description of "Production Assembler," which has a strength rating of "light." In that connection, the board observed that Trujillo

---

[5] Although the board stated in the body of its order that Trujillo's BFC was "medium," the board stated that Trujillo's BFC was "light" when it later summarized its conclusions for the purpose of determining Trujillo's award. The insurer has argued that it is clear from the context that the reference to the strength rating of "medium" was an error. The matter is not clear to us, however, and we do not think that we are at liberty to ignore it. Therefore, in light of the discrepancy, the case must be remanded to the board for a final determination of the proper strength rating for Trujillo's BFC, notwithstanding our ultimate holding that Trujillo was not entitled to present testimony at hearing to add to the record concerning his BFC.

had presented some evidence that the job required more lifting than is covered by the strength rating "light," but the board discounted that evidence because Trujillo failed to specify during reconsideration the frequency with which the job required him to lift the heavier weights.[6] In the end, the board concluded that the appropriate "adaptability factor" was identical to that found by the ALJ and agreed that claimant was entitled to 21 percent unscheduled permanent partial disability.

## B. *Logsdon v. SAIF Corporation*

Claimant Logsdon has had ongoing problems with his right knee since 1979. As pertinent to this case, he suffered a compensable injury to his right knee in January 1994, and the insurer accepted his claim. After about 18 months of treatment, the insurer closed the claim by notice of closure in August 1995 and Logsdon ultimately was awarded four percent scheduled permanent disability for loss of function in the right leg. Logsdon continued to seek medical treatment for problems with his right knee and, on May 30, 1996, saw an orthopedist, Dr. Greenleaf, who recommended reopening Logsdon's workers' compensation claim based on aggravation of the January 1994 injury and recommended that Logsdon have total knee replacement surgery. Greenleaf performed that surgery in October 1996.

Meanwhile, the insurer denied the aggravation claim and denied that Logsdon's right knee condition was related to the January 1994 injury. In October 1997, an ALJ found the insurer to be responsible for the claim for aggravation and ordered the insurer to accept it, which it did.

In December 1997, Logsdon saw another physician, Dr. Schieber, for ongoing right knee pain. Logsdon requested referral to a pain center, and Schieber agreed to make the referral. In May 1998, Schieber evaluated Logsdon for pain center treatment. Logsdon was an admitted heroin user, although he denied recent usage. Accordingly, Logsdon was

---

[6] Trujillo asserts that the evidence that the board had before it affirmatively established that his job required him to do more heavy lifting than the board found. Trujillo is mistaken; the evidence was equivocal and therefore did not require a finding in Trujillo's favor.

required to undergo drug screening before admission to the pain center. He ultimately was tested three times. The test results were inconclusive, but suggested that Logsdon had attempted to affect the test results by drinking large quantities of liquid so as to dilute his urine. On July 1, 1998, Dr. Ploss at the pain center reported to Logsdon's managed care organization that, because Logsdon's continued heroin use could not be ruled out, pain center treatment was not appropriate. Ploss also opined that Logsdon was, therefore, medically stationary as of that date. A few days later, Schieber concurred with that assessment. Thereafter, Logsdon continued to see Scheiber for pain medication and monitoring.

On August 19, 1998, the insurer closed Logsdon's aggravation claim by a notice of closure and awarded Logsdon temporary disability compensation beginning May 30, 1996, when Logsdon first saw the orthopedist, and continuing until May 11, 1998, the date that the insurer found Logsdon to have become medically stationary. The notice of closure also awarded Logsdon 35 percent scheduled permanent disability for loss of the right leg.

Logsdon requested reconsideration of that notice of closure. A panel of medical arbiters examined Logsdon on November 21, 1998, and, on January 7, 1999, the department issued its order on reconsideration increasing Logsdon's scheduled permanent disability award to 37 percent.

Thereafter, Logsdon timely sought a hearing before an ALJ respecting the order on reconsideration. About two weeks before the hearing, Logsdon attempted to depose Schieber and Ploss, the authors of the two exhibits submitted during reconsideration that established Logsdon's medically stationary status. Logsdon's position was that he was not medically stationary as of July 1, 1998, because he would have benefitted from further pain management treatment and, therefore, he was entitled to additional temporary partial disability benefits. Logsdon believed that the doctors' opinions to the contrary were unduly influenced by a desire to please the insurer, which had a financial interest in capping his temporary benefits. As he later explained to the board, "[t]he primary reason depositions are needed is to

attempt more fully to expose the extent of the efforts by [insurers] to interfere with the independent professional judgment of the doctors, and more fully to expose the impact of those efforts."

The insurer refused to schedule the doctors' depositions. Logsdon then moved to compel them, claiming both a statutory and regulatory right to such depositions, as well as a right under the state and federal constitutions. The insurers responded that Logsdon's motion was inappropriate at that stage of the proceeding because ORS 656.283(7) precluded him from raising a new issue at hearing. That is, because Logsdon failed to submit statements or depositions of the doctors during reconsideration, notwithstanding that the underlying documents on which Logsdon wished to cross-examine them were then available, ORS 656.283(7) barred their submission at hearing. Moreover, the insurers contended, Logsdon waived the right to argue a *constitutional* entitlement to present new evidence at hearing, because during the reconsideration period, he made no effort to depose or cross-examine the doctors, or otherwise to avail himself of procedures available during that time frame to produce evidence. In that connection, they argued that Logsdon's failure to take full advantage of the process at the appropriate time did not make the process unconstitutional.

The ALJ issued an interim order denying Logsdon's motion. The ALJ ruled that, under ORS 656.283(7), a claimant has no right to cross-examine witnesses at a hearing arising out of an order on reconsideration, and that the procedures for determining permanent partial disability awards set out in ORS 656.268 and ORS 656.283 satisfy due process. The case then went to hearing on the documentary evidence developed through reconsideration. The ALJ concluded that Logsdon had failed to prove that his claim was prematurely closed, but agreed that Logsdon was not medically stationary until July 1, 1998, rather than May 11, 1998, which the notice of closure had provided.[7] Ultimately, the ALJ also

---

[7] Notwithstanding that change in Logsdon's medically stationary date, the ALJ declined to order an additional award of temporary disability compensation, because the ALJ found no evidence that Logsdon's attending physician, Schieber, authorized time loss between May 30 and July 1, 1998. The board adopted that finding in its order on review.

reduced Logsdon's scheduled permanent disability to 34 percent. On January 20, 2000, in a brief order on review, the board affirmed.[8]

## C. *Mount v. Department of Consumer and Business Services*

Claimant Mount suffered a compensable injury to her left wrist in January 1996, while working as an occupational safety specialist for OR-OSHA. The insurer accepted the claim in March 1996, and Mount's doctor released her to her regular work in November 1996. In February 1997, Mount's doctor wrote a letter to the insurer explaining that Mount was doing very well, that her grip strength was within one standard deviation from the mean, and that any remaining weakness in grip strength was due to "deconditioning," rather than from the injury. Three weeks later, the same doctor advised the insurer that Mount had decreased strength to the left wrist due to nerve damage, although he did not specifically attribute that loss to Mount's on-the-job injury.[9]

The department closed Mount's claim by determination order[10] in July 1997, with a disability award of 21 percent for the left arm. That award was based on findings that Mount suffered loss of range of left wrist motion, loss of left wrist strength, and loss of left arm pronation.

---

[8] Logsdon sought reconsideration of that board order on review. On February 11, 2000, the board issued an order on reconsideration supplementing, adhering to, and republishing the earlier order on review.

[9] The doctor handwrote his comment concerning nerve damage on a letter from the insurer requesting attribution of the condition to an involved nerve. The letter asked the following:

"I realize that Ms. Mount did not suffer a direct nerve injury, however, according to the Oregon Standards for rating disability, *valid* loss of strength, substantiated by clinical findings, shall be valued as if the nerve supplying (innervating) the weakened muscle(s) was impaired. It is unclear from the information contained in this file what nerve was damaged or what muscle was weakened at the time of this injury. Please clarify the reason for the loss of left hand strength."

(Emphasis is original.)

[10] Before 1999, the workers' compensation statutes provided that claims could be closed by the department through the mechanism of a determination order, or by insurers or self-insured employers through the mechanism of a notice of closure. ORS 656.268 (1997). In 1999, the legislature amended ORS 656.268(1) to give insurers or self-insured employers sole responsibility for claim closure. Or Laws 1999, ch 313, § 16. *See Koskela*, 331 Or at 371 n 6 (discussing that amendment).

On July 24, 1997, the insurer requested reconsideration of the determination order, seeking a reduction in Mount's award. The insurer also requested the appointment of a medical arbiter. *See* ORS 656.268(7) (either party may request appointment of medical arbiter). Under the applicable statute, the insurer's timely request for the appointment of a medical arbiter had the effect of postponing the department's usual 18-working-day deadline for issuing its order on reconsideration for an additional 60 calendar days, or until October 20, 1997. ORS 656.268(6)(d).[11]

A medical arbiter examined Mount on Thursday, October 9, 1997, and made his report the same day. In it he found that, although Mount's grip strength was 64 pounds on the right and only 39 pounds on the left, she had full muscle strength in both upper extremities. He concluded:

"I am of the opinion that this worker does not have a significant limitation in the ability to repetitively use the left hand, wrist or forearm, due to a diagnosed chronic and permanent medical condition arising out of the accepted injury, as based on objective findings today."

Under OAR 436-030-0165(3)(c), the medical arbiter was required to submit his report to the worker, the insurer, and the director, within five working days of its completion. In accordance with that rule, the department timely received the report on Thursday, October 16, 1997, and Mount has not contended that she did not also receive a copy of the report on that date. Mount did not immediately notify the department

---

[11] ORS 656.268(6)(d) provides:

"The reconsideration proceeding shall be completed within 18 working days from the date the reconsideration proceeding begins, and shall be performed by a special evaluation appellate unit within the department. The deadline of 18 working days may be postponed by an additional 60 calendar days if within the 18 working days the department mails notice of review by a medical arbiter. * * *"

Under ORS 656.268(6)(e), the period for completing the reconsideration process begins when the department receives the worker's request for reconsideration. *See also* ORS 656.268(6)(e) (1997) (providing same time frame for either party's request for reconsideration of a determination order issued by the department).

of any objection either to the arbiter's conduct of the examination or to the contents of the report, nor did she immediately take any other action to challenge the medical arbiter's report.

The department issued its order on reconsideration the following Monday, October 20, 1997, as it was required to do under ORS 656.268(6)(d). Based on the medical arbiter's report, it reduced Mount's scheduled award from 21 percent to one percent, which resulted in a determination that the insurer had overpaid Mount by more than $3,600.

Mount immediately hired counsel and, on October 29, 1997, she requested a hearing. The following week, the board issued a notice of hearing scheduled for January 30, 1998. On January 8, 1998, Mount sent a letter to the ALJ informing him that she intended to testify at the hearing on her own behalf and asserting that the "current statutory scheme regarding admissibility of testimony is unconstitutional." Also on January 8, Mount sought to cross-examine the medical arbiter,[12] but was not given the opportunity to do so.

At the hearing before the ALJ, Mount objected to the inclusion of the medical arbiter's report in the reconsideration record on the ground that she had not had an opportunity to cross-examine the doctor who prepared the report. She claimed that she had a constitutional due process right to cross-examine witnesses against her and that she also was entitled to do so under ORS 656.310(2), which provides that a medical report presented by an insurer or employer is *prima facie* evidence as to the matter contained therein, so long as the examining doctor consents to submit to cross-examination.[13]

---

[12] That date, which is more than two months after the reconsideration order issued, is based on counsel's own statement to the ALJ. Various opinions issued throughout the course of the proceeding suggest that Mount made the request to cross-examine the medical arbiter earlier, *see, e.g., Mount*, 181 Or App at 461-62 (Wollheim, J., dissenting), but the record does not support any earlier date.

[13] ORS 656.310(2) provides:

"The contents of medical, surgical and hospital reports presented by claimants for compensation shall constitute prima facie evidence as to the matter contained therein; so, also, shall such reports presented by the insurer or self-insured employer, provided that the doctor rendering medical and surgical reports consents to submit to cross-examination. * * *"

Mount conceded at the hearing that, under board precedent, she was not entitled to testify at the hearing. However, she made an offer of proof to the effect that she would have testified concerning, among other things, the procedures that the medical arbiter used during the examination, the tests that he had conducted, and the problems that she continued to experience with her injured hand, including pain and strength loss.

Following the hearing, the ALJ issued an opinion and order affirming the order on reconsideration in all material respects. Among other things, the ALJ rejected Mount's argument that the medical arbiter's report should have been excluded because she was unable to cross-examine the medical arbiter, holding that ORS 656.310(2) does not grant claimants a statutory right to cross-examine a medical arbiter. The ALJ did not, however, address Mount's constitutional argument on that point. The ALJ also rejected Mount's argument that she should have been permitted to testify at the hearing, on the ground that the board previously had rejected similar statutory and constitutional arguments on that point and the ALJ was bound by board precedent.

Ultimately, the ALJ held that the department was correct to give weight to the medical arbiter's findings because his examination was "conducted closer in time to the reconsideration process." He also ruled that, in any event, the medical arbiter's report was not actually inconsistent with the report of Mount's own treating physician. It was true, the ALJ acknowledged, that the medical arbiter had found no loss of grip strength, but the treating doctor had not attributed the loss of grip strength that he had diagnosed to Mount's compensable injury. The ALJ affirmed the order on reconsideration.

Mount requested board review of the ALJ's opinion and order. There, she repeated her argument that it was necessary to cross-examine the medical arbiter because of the discrepancy between her treating doctor's conclusions that Mount had suffered nerve damage and the medical arbiter's conclusion that she showed no loss of strength. She also pointed to an apparent contradiction within the four corners of the medical arbiter's report: The report contained a test

result showing a difference in strength between Mount's right and left arm, but it concluded with a zero loss of strength in Mount's left arm for purposes of the disability percentages. The insurer countered that the board should partially discount the treating physician's earlier report because he initially had concluded that the loss of strength was due to "deconditioning" and never explained his later conclusion that there was nerve damage. The insurer also contended that there was a legitimate explanation for alleged discrepancies in the arbiter's report. The board refused to alter its conclusion on review and affirmed the ALJ's opinion and order in all pertinent respects.

D. *Additional Procedural Background*

All three claimants—Trujillo, Logsdon, and Mount—sought judicial review of the board's orders in the Court of Appeals. There, each argued that, under this court's opinion in *Koskela*, the board erred in not allowing him or her to present additional evidence at hearing. In each case, a majority of the Court of Appeals ultimately held that ORS 656.283(7) precluded the admission at hearing of the type of evidence that the claimants attempted to introduce, that this court's opinion in *Koskela*, which dealt with a claimant's right to permanent total disability benefits, was distinguishable, and that the statutory procedure that renders that evidence inadmissible at hearing in a case dealing with a claimant's right to either permanent partial disability benefits or temporary partial disability benefits is not constitutionally defective in any way that claimants had contended. As noted, we allowed all three claimants' petitions for review of the Court of Appeals decisions.

## II. DISCUSSION

Before this court, claimants continue to press their argument that the board erred in not allowing the presentation of additional evidence at hearing. They rely on this court's decision in *Koskela*, 331 Or at 382, in which this court held that "the post-1995 statutory scheme for assessing whether a worker should receive an award of [permanent total disability benefits] fails to satisfy procedural due process requirements" because "the worker does not have the opportunity to make a meaningful record on elements of

proof that are necessary for the worker to meet the burden of proof and persuasion." Based on that holding, claimants contend that due process entitled them to supplement the reconsideration record with their own testimony and/or depositions of the authors of reports submitted at the reconsideration level.

In response, insurers argue that the ALJs correctly refused to allow claimants to present additional evidence in these cases. Insurers also contend that, among other things, claimants cannot complain about any lack of due process before the ALJs, because they failed to take advantage of the reconsideration process by failing even to try to submit the evidence in question to the department on reconsideration. In short, according to insurers, each of the claimants has failed to exhaust his or her administrative remedies.

Because it provides the centerpiece of the Court of Appeals' opinions and the parties' arguments in each of these cases, we begin with a brief description of this court's decision in *Koskela*. In 1986 and 1989, Koskela suffered compensable injuries to his jaw. 331 Or at 365. In June 1994, after Koskela had undergone multiple surgeries, his treating physician declared him to be medically stationary, and his claim was closed by determination order in October 1994. *Id.* at 366. He was awarded 14 percent permanent partial disability benefits. *Id.* Koskela sought reconsideration and, specifically, sought to prove that he was permanently and totally disabled. *Id.* at 366-67. To do so, he was required to prove that his disability permanently prevented him from regularly performing work at gainful and suitable employment, that he was willing to seek regular gainful employment, and that he had made reasonable efforts to obtain such employment. *Id.* at 367.

In July 1995, the department issued an order on reconsideration rejecting Koskela's contention that he was permanently totally disabled. *Id.* Koskela then requested a hearing on the matter. *Id.* At the beginning of the hearing, Koskela stated that he intended to introduce oral testimony from himself, his doctor, a vocational expert, and lay witnesses concerning the extent of his disability, whether suitable employment was available, and his efforts and willingness to find suitable employment. *Id.*

At the time that Koskela first sought reconsideration, ORS 656.283(7) (1993) provided, in part,

"Nothing in this section shall be construed to prevent or limit the right of a worker, insurer or self-insured employer to present evidence at hearing and to establish by a preponderance of the evidence that the standards * * * for evaluation of the worker's permanent disability were incorrectly applied in the reconsideration order pursuant to ORS 656.268."

As this court observed, that statute previously had been interpreted to permit a party "to introduce evidence at hearing [before the ALJ] that it had not previously introduced at reconsideration [before the department]." 331 Or at 366. Accordingly, when Koskela appeared before the department, the then-applicable statutes did not require him to present evidence at that stage in order to preserve his claim that he was later entitled to present oral testimony before the ALJ.

In July 1995, however, while Koskela's case was pending before the department, a 1995 amendment to ORS 656.283(7) took effect. The amendment precluded the introduction of new evidence at a post-reconsideration hearing and limited the issues that the ALJ may consider at hearing to those that a party had raised on reconsideration. 331 Or at 367. Relying on the new statutory restrictions, the ALJ refused to admit any additional testimony at the hearing in support of Koskela's contention that he should have received permanent total disability benefits. *Id.*

In response to the ALJ's ruling, Koskela argued that the 1995 amendments to the claim closure process violated his federal due process rights because they deprived him of the right to appear, to present live testimony, and to cross-examine adverse witnesses in meeting his burden of proof. The ALJ rejected Koskela's constitutional arguments and held, based on the written record that the parties had compiled during the reconsideration process, that Koskela had failed to meet his evidentiary burden. Accordingly, the ALJ affirmed the department's order on reconsideration. *Id.* at 368. The board later affirmed, and a divided Court of Appeals also affirmed.

As noted, this court reversed. The court briefly reviewed the statutory scheme that existed before the 1995 amendments, as well as the changes made to that scheme by those amendments. In that connection, the court observed that, after the 1995 amendments, the "record on which a decision is made regarding an award of [permanent total disability] benefits—or any permanent disability benefits—consists solely of the parties' written submissions." *Id.* at 377. The court then turned to evaluate whether that statutory scheme comported with federal due process requirements. The court focused its analysis on whether the process afforded by the relevant statutes provided claimants with a meaningful opportunity to be heard, using the three-factor test set out in *Mathews v. Eldridge,* 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976). That is, the court weighed the claimant's private interest in disability benefits; the risk of erroneous deprivation of that interest through the procedures provided; the value, if any, of additional or substitute procedures; and the government's interest, including the fiscal or administrative burden of additional or substitute procedures. 331 Or at 378-82.

Applying those factors, the court concluded, first, that Koskela's private interest was great. *Id.* at 379. Moreover, in light of the fact that Koskela had the burden of proof on a matter for which the decision-maker had to employ a subjective assessment of his credibility and veracity, the court concluded that there would be substantial value in additional or substitute procedures that would allow at least some opportunity for the presentation of evidence at an oral hearing. *Id.* at 381. Finally, the court concluded that the cost of additional or substitute procedures to the government was minimal, given the magnitude of the private interest at stake. *Id.* at 382. In light of the foregoing, the court held that due process required that Koskela be given the opportunity, at some meaningful stage in the process, to introduce oral testimony. *Id.* Accordingly, the court held, "the post-1995 statutory scheme for assessing whether a worker should receive an award of [permanent total disability] benefits fails to satisfy procedural due process requirements." *Id.*

■   In the present cases, each claimant argues that, as in *Koskela,* a witness's credibility and veracity was at issue with

respect to a point on which the claimant bore the burden of proof. Therefore, they argue that, as in *Koskela*, due process requires that there be some opportunity for an oral evidentiary hearing. In addition, Logsdon and Mount argue that that right to present oral testimony at hearing includes the right to cross-examine adverse witnesses. According to the claimants, because it provides no such opportunity, the statutory scheme is unconstitutional with respect to each of their claims.

We note at the outset that, in *Koskela*, this court did consider the issue of the admissibility of oral testimony at hearing notwithstanding the claimant's failure to present the desired evidence during reconsideration. However, as discussed above, in *Koskela*, the rules and procedures governing the admissibility of oral evidence changed after the reconsideration process had begun. When Koskela sought reconsideration, the 1995 amendments to ORS 656.283(7) had not taken effect. At that time, the statutes did not require him to submit his entire case during reconsideration or forfeit the right to supplement the record.

In the present cases, by contrast, all the claims were closed after the effective date of the 1995 amendments. Claimants in these cases therefore were on notice that the statutes preclude the admission of new evidence at hearing and, therefore, that all evidence that they wished to be part of the record had to be submitted to the department during reconsideration. Thus, we now face a different question than that presented in *Koskela*, *viz.*, whether, notwithstanding the terms of ORS 656.283(7), a claimant has a right to introduce evidence to support his or her claims at the hearing before the ALJ when the claimant failed to submit that evidence to the department during reconsideration. Put another way, the question is, can a claimant bypass the opportunity to present written evidence at reconsideration and then press a constitutional due process argument when the ALJ refuses to permit him or her to present new evidence, including oral testimony, at hearing? For the following reasons, we hold that the answer to that question is no.

It is beyond dispute that exhaustion of administrative remedies is a prerequisite to a constitutional or other

challenge to an administrative scheme. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 661, 20 P3d 180 (2001); *Mullenaux v. Dept. of Revenue*, 293 Or 536, 539, 651 P2d 724 (1982) (so holding). As this court stated in *Outdoor Media*, "[t]he doctrine of exhaustion applies when a party, without conforming to the applicable statutes or rules, seeks judicial determination of a matter that was or should have been submitted to the administrative agency for decision." 331 Or at 661. The doctrine requires that a party properly raise issues before the administrative agency and that the party timely and adequately address the merits of the dispute before the agency. *Mullenaux*, 293 Or at 540-41. A party does not exhaust his or her administrative remedies "simply by stepping through the motions of the administrative process without affording the agency an opportunity to rule on the substance of the dispute." *Id.* at 541.

The reconsideration process before the department for determining a disability award is part of an administrative remedy for work-related injuries provided by the Workers' Compensation Law. The reconsideration process begins with a request for reconsideration. ORS 656.268(6)(e). As noted, Trujillo requested reconsideration in August 1996. Logsdon requested reconsideration in October 1998. Mount requested reconsideration in July 1997.

The statutes governing the reconsideration process that were in effect on the foregoing dates were substantially the same in all pertinent respects as those in effect today. Under those statutes, the reconsideration process is mandatory. *See* ORS 656.268(5)(c) ("If a worker objects to the notice of closure, the worker first must request reconsideration by the director [of the department] under this section.")[14] The worker must request reconsideration within 60 days of the date of the notice of closure. *Id.* Once the reconsideration process is complete, a dissatisfied worker must request a hearing on the reconsideration order within 30 days of the

---

[14] Similarly, ORS 656.268(5)(b) (1997) made the process mandatory for claims closed by determination order. That section provided:

"If the worker, the insurer or self-insured employer objects to a determination order issued by the department, the objecting party must first request reconsideration of the order. The request for reconsideration must be made within 60 days of the date of the determination order."

order to obtain further review. ORS 656.268(6)(g). If, after the hearing before an ALJ, a claimant still is dissatisfied, then he or she can appeal from the ALJ's order to the board. ORS 656.289(3). Finally, a claimant may seek review of a board order in the Court of Appeals. ORS 656.298(1). Under the foregoing statutory scheme, then, a worker must complete the process at each level or forfeit the right to proceed to the next level.

In addition, the statutes require claimants to raise and preserve all issues during the reconsideration process. ORS 656.268(8) provides that "[n]o hearing shall be held on any issue that was not raised and preserved before the director at reconsideration. However, issues arising out of the reconsideration order may be addressed and resolved at hearing." Similarly, as noted, ORS 656.283(7) provides, in part, that "issues that were not raised by a party to the reconsideration may not be raised at hearing unless the issue arises out of the reconsideration order itself." As this court made clear in *Koskela*, after the 1995 amendments to the workers' compensation law took effect, "a worker must submit *all* evidence of the extent of disability in writing at reconsideration." 331 Or at 375 (emphasis in original).

We also observe that, at the time that each of the claimants in these cases sought reconsideration, pertinent statutes and rules provided (and still provide) multiple avenues for requesting and submitting additional evidence, including the cross-examination of witnesses. For example, ORS 656.268(6)(a) provides a statutory basis for a claimant to correct erroneous information and to submit additional information to the department on reconsideration.[15] Moreover, if necessary, the director of the department has authority to issue subpoenas to witnesses, to obtain documents, and to take testimony. ORS 656.726(4)(d) and (e).[16]

---

[15] ORS 656.268(6)(a)(B) provides that, at the reconsideration proceeding,

"the worker or the insurer or self-insured employer may correct information in the record that is erroneous and may submit any medical evidence that should have been but was not submitted by the attending physician at the time of claim closure."

[16] ORS 656.726 provides generally for the duties and powers of the director of the Department of Consumer and Business Services to administer the workers' compensation laws. ORS 656.726(4) provides, in part, that, to that end, the director may:

In addition to the foregoing, OAR 436-030-0115(3) permits a claimant to submit any document or factual information into the record during reconsideration.[17] Other rules specifically contemplate that a claimant is entitled to raise issues for the director's consideration during reconsideration. For example, OAR 436-030-0135(6) provides that the "reconsideration order *shall* address issues raised by the parties," as well as addressing compensation. (Emphasis added.) OAR 436-030-0145(3) provides that the department shall consider issues raised by the parties.[18] And the department may request additional information necessary to complete the reconsideration. *Id.* That additional information apparently can include, in an appropriate case, a personal appearance by a party. *See* OAR 436-030-0115(2).[19]

---

"(d) Issue and serve by representatives of the director, or by any sheriff, subpoenas for the attendance of witnesses and the production of papers, contracts, books, accounts, documents and testimony in any inquiry, investigation, proceeding or rulemaking hearing conducted by the director or the director's representatives. The director may require the attendance and testimony of employers, their officers and representatives in any inquiry under this chapter, and the production by employers of books, records, papers and documents without the payment or tender of witness fees on account of such attendance.

"(e) Generally provide for the taking of testimony and for the recording of such proceedings."

[17] OAR 436-030-0115(3) provides:

"All parties have an opportunity to submit documents to the record regarding the worker's status at the time of claim closure. Other factual information may be submitted for incorporation into the record pursuant to ORS 656.268(6) within the time frames outlined in OAR 436-030-0145. Such information may include, but is not limited to, responses to the documentation and written arguments, written statements and sworn affidavits from the parties."

[18] OAR 436-030-0145(3) provides:

"Ten working days after the date the reconsideration proceeding begins, the reconsideration request and all other appropriate information submitted by the parties shall become part of the record used in the reconsideration proceeding. * * *

"(a) Evidence received or issues raised subsequent to the tenth working day deadline will be considered in the reconsideration proceeding to the extent practicable.

"(b) Upon review of the record the director may request, in accordance with ORS 656.268(6), any additional information deemed necessary for the reconsideration and set appropriate time frames for response."

[19] OAR 436-030-0115(2) provides, in part:

"For purposes of these rules, 'reconsideration proceeding' means the procedure established to reconsider a Notice of Closure and does not require personal appearances by any of the parties to the claim or their representatives, *unless requested by the department.*"

As we show below, in each of the three cases now before this court, claimants failed to avail themselves of the opportunity afforded by the foregoing statutes and rules to make a complete record at reconsideration and, therefore, failed to exhaust his or her administrative remedies.

## III. CLAIMANTS' FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

■     As discussed above, claimant Trujillo presented documentation to the department during reconsideration in an effort to establish that his BFC was "heavy," rather than "light," as the notice of closure had stated. He offered an affidavit in which he provided some details concerning the duties of the job he held at injury, and he offered a form on which he listed the titles of the jobs he had held earlier. However, he did not offer to the department the specific evidence that he now claims is crucial to establish his BFC, *viz.*, evidence respecting the frequency with which he lifted certain weights at his job at the time of injury and evidence respecting the precise dates or specific duties of the other jobs that he had performed earlier.

Instead, Trujillo bypassed the opportunity that the rules and statutes provide to present that information in written form during reconsideration and, instead, sought to introduce that evidence, for the first time, through his own oral testimony at the hearing. If Trujillo had offered the substance of that oral tesimony to the department during reconsideration, and if the department had rejected that evidence on credibility grounds, then Trujillo logically might have claimed a need for a hearing to prove his case to the ALJ. However, he did not take the requisite preliminary step. And, having failed to take full advantage of the procedures that were available to him under the existing rules and statutes during reconsideration, Trujillo cannot now be heard to complain that the constitution requires additional procedures at a later hearing.

---

(Emphasis added.) The version of that rule that was in effect at the time of the claim closures in the instant cases was substantially similar to the foregoing, except that it contained a reference to determination orders.

■ Claimant Logsdon desired to depose the two doctors who had concluded that he became medically stationary on July 1, 1998, and then to introduce transcripts of those depositions at hearing to prove that the insurer had coerced the doctors' opinion regarding his medically stationary status.

The documents upon which Logsdon wanted to question the doctors—Ploss's letter stating her opinion concerning Logsdon's medically stationary date and Scheiber's letter concurring—were part of the reconsideration record before the department and earlier had been provided to Logsdon. Logsdon claimed before the ALJ that he suspected that the insurer unduly had influenced the doctors to base their opinion of his medically stationary date on other than medical considerations. However, Logsdon did not make any effort to investigate those suspicions during the reconsideration period. As noted above, ORS 656.268(6)(a)(B) would have permitted Logsdon to correct erroneous information during reconsideration and to submit additional information to the department at that time. In addition, he could have asked the director of the department to exercise its authority under ORS 656.726(4)(d) and (e) to issue subpoenas to the doctors or to permit him to take their testimony. He did not seek to depose the doctors at that time, nor did he ask the department to investigate the matter.

Instead, Logsdon also bypassed the procedures available to him during reconsideration and sought to obtain (and introduce) that evidence for the first time at the hearing before the ALJ. As we already have discussed, the doctrine of exhaustion required Logsdon to employ available discovery devices at the reconsideration level before invoking a constitutional right to obtain the same discovery at the next level of review. Logsdon failed to do so.[20] It follows that, by failing even to attempt to obtain the depositions during the reconsideration process, Logsdon failed to exhaust his administrative remedies. It further follows that, like Trujillo, Logsdon cannot now be heard to complain that ORS 656.283(7) is

[20] In that connection, we observe that the basis for the ALJ's (and, later, the board's) rejection of Logsdon's request for depositions was not that such information would not have been admissible on reconsideration, but that Logsdon did not have a right to cross-examine witnesses at hearing.

unconstitutional because it bars the admission of new evidence at the later hearing.

■ Claimant Mount's desire to present additional evidence at hearing arose out of the fact that the department, in its order on reconsideration, substantially reduced her entitlement to disability benefits based on the medical arbiter's conclusion that any lingering problems that she experienced with her wrist were not due to her work-related injury. Like Trujillo, Mount wished to testify orally at the hearing to explain, among other things, the deficiencies in the medical arbiter's examination and the present condition of her wrist. And, like Logsdon, Mount wished to depose the medical arbiter with respect to his conclusions and then to introduce a transcript of the deposition at the hearing.

As noted above, the medical arbiter examined Mount on Thursday, October 9, 1997. He submitted his report to the department and to the parties five working days later, on Thursday, October 16, 1997, as he was required to do by OAR 436-030-0165(3)(c). Moreover, ORS 656.268(6)(d), the statute governing the timing of the issuance of orders on reconsideration when there has been a medical arbiter examination, required that such orders issue within 60 days after the eighteenth working day following the worker's request for reconsideration. Thus, the department was required to, and in fact did, issue its order on reconsideration on Monday, October 20, 1997.

To the extent that Mount believed that the medical arbiter's report erroneously understated her continuing pain or otherwise misstated her condition, she was aware of that fact at the time that the report was submitted. She also was aware at that time that she was dissatisfied with the way in which the medical arbiter had conducted her examination. Thus, she was in a position at that point to connect the two different circumstances and to argue that the outcome was not the result of an adequate record. The deadline for the issuance of the order on reconsideration was statutory and, therefore, Mount was on notice that the order would be released very soon after her receipt of the medical arbiter's report.

We acknowledge that the time frame here was very short—three days, by our count. However, that fact does not relieve Mount of the necessity of following the procedures under ORS 656.268(6)(a), ORS 656.726(4)(d) and (e), and under OAR 436-030-0115(3) and OAR 436-030-0145(3), to challenge the medical arbiter's report and to provide further information respecting her own condition, including offering her own affidavit to the department.[21] She did not attempt to correct the record herself, nor did she request the department to exercise its authority either to subpoena the medical arbiter or to ask the medical arbiter to clarify his report. She cannot now successfully complain that due process somehow requires that she be allowed to do at hearing what she did not attempt to do during reconsideration.[22]

One final point merits discussion. None of the claimants has seriously argued in the briefs that he or she was not required to exhaust administrative remedies because exhaustion would have been futile. See *Nutbrown v. Munn*, 311 Or 328, 347-48, 811 P2d 131 (1991) (recognizing notion of futility of exhaustion in case of "implacable hostility" of administrative forum). Neither are we aware of anything in the record of any of these cases that would justify consideration of that exception to the doctrine of exhaustion.

It follows from the foregoing that the claimants in these cases were not without remedies at the reconsideration level; they simply failed to pursue them. Judicial intervention in the process on the basis of some later-asserted constitutional theory thus is inappropriate in any of the three cases. The claimants in these cases failed to exhaust their administrative remedies. That failure now bars them from pursuing their constitutional challenges to the limitations on evidence used in the review process set out in ORS

---

[21] We are aware that Mount was not represented by counsel during reconsideration. However, that fact does not affect our analysis in light of the fact that Mount has not contended that she was prevented from being represented for some reason attributable to the insurer or the department.

[22] We observe that ORS 656.268(6)(f) provides that a "medical arbiter report may be received as evidence at a hearing even if the report is not prepared in time for use in the reconsideration proceeding." The question of a claimant's right to present additional evidence at hearing to address a medical arbiter report that was *not* available during reconsideration is not now before this court, and we do not address it.

656.283(7). For that reason, we affirm the board's orders in *Logsdon v. SAIF* and *Mount v. DCBS*, and we affirm the decisions of the Court of Appeals in those cases. We also affirm the Court of Appeals decision in *Trujillo v. Pacific Safety Supply* and remand that case for reconsideration on the issue of the correct adaptability factor applicable to Trujillo's claim.

The decisions of the Court of Appeals are affirmed. The case of *Trujillo v. Pacific Safety Supply* is remanded to the Workers' Compensation Board for further proceedings.