DEHOOG, P. J.
*594 Respondent, a long time Oregon educator, seeks judicial review of a final order revoking his teaching and administrator licenses.[1] The Teacher Standards and *230 Practices Commission (TSPC) revoked those licenses in 2015, several years after respondent retired as principal of Astoria High School. TSPC concluded that respondent had committed gross neglect of duty 11 years earlier, in 2004, for failing to investigate allegations of an inappropriate relationship between a teacher and a student at the high school. Respondent raises three assignments of error. We write to address only the second assignment, in which respondent challenges TSPC's determination that respondent committed gross neglect of duty under ORS 342.175(1)(b), based on a violation of OAR 584-020-0040(4)(n).[2] As explained below, we conclude that TSPC's order lacks substantial evidence and reason; accordingly, we reverse and remand. We reject respondent's other assignments of error without discussion.
We take the facts from the administrative law judge's (ALJ) proposed order, which TSPC affirmed without modification, and from uncontroverted evidence in the record. Talbott v. Teacher Standards and Practices Comm. , 260 Or.App. 355, 358, 317 P.3d 347 (2013). To place those facts in context, however, we first set out the applicable regulatory framework.
ORS 342.175(1)(b) authorizes TSPC to suspend or revoke the license of a teacher or administrator based on "[g]ross neglect of duty." OAR 584-020-0040(4)(n), in turn, provides that "[g]ross neglect of duty" means "any serious and material inattention to or breach of professional responsibilities," including, "[s]ubstantial deviation from professional standards of competency set forth in OAR 584-020-0010 through 584-020-0030." Two of those professional standards of competency are at issue here. The first, *595 OAR 584-020-0010(5) provides that "[t]he educator demonstrates a commitment to * * * [u]se professional judgment." The second, OAR 584-020-0025(3)(a), provides that "[t]he competent administrator demonstrates * * * [l]eadership skills in managing the school, its students, staff, and programs as required by lawful and reasonable district policies, rules, and regulations, state and federal laws and regulations, and other programs as assigned, and assures that staff is informed of these requirements."[3]
Returning to the facts of this case, respondent has been licensed in Oregon as an educator since 1974 and as an administrator since 2000. In September 2000, he became the principal of Astoria High School, and he continued in that position until he retired in 2012. As principal, his performance evaluations were "overwhelmingly positive" and he was "very highly regarded" as an administrator.
In approximately August 2013, H, a former student of Astoria High School, told a counselor that, in 2004, when she was a 17-year-old student, she had had a sexual relationship with M, a science teacher and coach at the school. The counselor reported that allegation to the police, who conducted an investigation and sent a report of the investigation to Hoppes, who was then the district superintendent.[4] Hoppes, in turn, sent a letter to TSPC, in which he reported "a possible violation involving a licensed administrator." The letter stated that Hoppes had received information from the police that a teacher had allegedly had an inappropriate sexual relationship with a student in 2004 and that the administrator (respondent) had been aware-at the time-that the student had moved in with the teacher while the teacher's wife and children were out of the country. Hoppes also stated that the district "does not have any documentation showing [that respondent] attempted *231 to communicate with the student's parents or Children Services regarding *596 the living arrangements." Subsequently, Hoppes spoke to two instructional assistants at the school-Belleque and MacDonald-who each stated that they had, in the spring of 2004, expressed their concerns about the relationship between M and H to respondent.
TSPC also conducted an investigation and, in April 2014, charged respondent with gross neglect of duty, ORS 342.175(1)(b), in violation of OAR 584-020-0040(4)(n), specifically as that rule incorporates OAR 584-020-0010(5) and OAR 584-020-0025(3)(a).[5] In short, respondent was charged with substantially deviating from professional standards of competency in his (1) use of professional judgment and (2) demonstration of leadership skills in managing the school as required by district policies and state and federal law.
The notice alleged that the charges were based on the following "conduct": that TSPC had received a report about a police investigation into an alleged inappropriate sexual relationship that took place in 2004 between M and H; that in the spring of 2004, school employees Belleque and MacDonald had reported to respondent concerns about inappropriate behavior on the part of M-specifically, that they had witnessed M alone with H in his classroom during lunch and tutorial times with the lights off and the door locked; that, "[a]ccording to School District records, there is no evidence that [respondent] addressed these complaints in any manner with [M] or other authorities"; that H had reported to authorities that she had engaged in sexual conduct with M in his classroom in 2004; that M and H had met with respondent prior to H moving into M's house, purportedly to help care for M while he recovered from an ankle injury while his wife and family were out of the country, and that respondent had approved of that plan; and that M and *597 H had engaged in sexual intercourse while H resided in M's residence.
Respondent requested a contested case hearing, which was held before an ALJ from the Office of Administrative Hearings. After the hearing, the ALJ issued a proposed order, finding the following facts as relevant to the charges at issue on review:
"During the 2003-2004 school year, [respondent] knew [H], then a senior, to be a socially isolated person, with grade and attendance issues, and a poor home life. [Respondent] knew [M], then a science teacher and wrestling coach, to be a married man with two children. [Respondent], as well as other faculty and staff members, believed that [M] was serving as a mentor to [H].
"Unbeknownst to [respondent], sometime during the fall semester of the 2003-2004 school year, [M] and [H] developed an intimate relationship that grew to include sexual contact that sometimes occurred in [M's] classroom and science storage room. That relationship continued until June 2004.
"Sometime prior to March 3, 2004, [M] and [H] informed [respondent] of a plan for [H] to move into [M's] home while [M's] family was away so that [H] could assist [M], who had a broken leg at the time, with household tasks. There is no evidence that [respondent] took any action to dissuade them from entering into that living arrangement, that he attempted to discuss the arrangement with [H]'s parents or school counselors, or that he reported the arrangement to anyone.[6 ]
*232 "On March 3, 2004, [H] turned 18 years old. On or shortly after that date, she moved into the [M] household, and she and [M] continued their sexual relationship. During this time period, [H] accompanied [M] to some *598 school social functions that included other faculty members, and she sometimes rode to school with [M] on the back of his motorcycle.
"Sometime between January and June 2004, Ms. MacDonald, Ms. Belleque, and another staff person went to [respondent's] office and expressed that they were uncomfortable with some things they had observed relating to [M] and [H]. They specifically mentioned their concerns about [M] and [H] being alone in [M's] classroom with the lights off and the door locked.[7 ] There is no evidence that [respondent] took any actions to investigate or address the staff members' concerns. There is no evidence that he spoke to [M], [H], or anyone else about the situation.
"Ms. Belleque subsequently heard rumors that [H] was living with [M], and she observed [H] and [M] arriving to school together on [M's] motorcycle. Because she continued to observe the same classroom behavior involving [H] and [M], she went to [respondent] a second time and conveyed that she continued to have concerns about the situation. There is no evidence that [respondent] took any actions to investigate or address Ms. Belleque's continuing concerns. There is also no evidence that he spoke to [M], [H], or anyone else about the situation."
Based on those facts, the ALJ concluded that TSPC had proved that respondent "committed gross neglect of duty under OAR 584-020-0040(n), as it incorporates OAR 584-020-0010(5) and 584-020-0025(3)(a)," and recommended license revocation-"the harshest sanction available."
Respondent filed various exceptions to the ALJ's proposed order. TSPC rejected those exceptions and, on July 21, 2015, adopted the proposed order as its final order and revoked respondent's administrator and teaching licenses. Respondent seeks judicial review of the final order.
As noted, in his second assignment of error on review, respondent contends that TSPC's finding that he committed gross neglect of duty in violation of OAR 584-020-0040(4)(n), based on OAR 584-020-0025(3) and OAR 584-020-0010(5), is not supported by substantial evidence in the record. We agree.
*599 We must set aside or remand an agency's order if it is not supported by substantial evidence in the record. ORS 183.482(8)(c). "[I]mplicit in the requirement that the order be supported by substantial evidence is a requirement that the agency's findings and conclusions be supported by 'substantial reason.' " Roadhouse v. Employment Dept. , 283 Or.App. 859, 865-66, 391 P.3d 887 (2017) (citing Jenkins v. Board of Parole , 356 Or. 186, 195, 335 P.3d 828 (2014) ). As the Supreme Court recently reiterated, that requirement exists " 'both for purposes of meaningful judicial review and to ensure that the agency gives responsible attention to its application of the statute.' " Jenkins , 356 Or. at 195, 335 P.3d 828 (quoting Ross v. Springfield School Dist. No. 19 , 294 Or. 357, 370, 657 P.2d 188 (1982) ). Thus, the agency must "articulate in a contested case the rational connection between the facts and the legal conclusion it draws from them." Ross , 294 Or. at 370, 657 P.2d 188.
Here, TSPC revoked respondent's licenses based on its factual findings that respondent did not address concerns raised by staff members of inappropriate behavior by M with regard to H, and that he took no action after he learned that H planned to move into M's residence while M's wife was away. Respondent's inaction, according to TSPC, evidenced an extreme lack of professional judgment and leadership skills in managing the school, such that it constituted a substantial deviation from professional standards of competency and, therefore, a gross *233 neglect of duty under OAR 584-020-0040(4)(n). However, TSPC failed to adequately explain its reasoning in support of that legal conclusion.
TSPC stated:
"The relevant point * * * is that [respondent] received seemingly reliable information from multiple staff members that [M] might be engaging in a boundary violation with a female student. Coupled with that information was [respondent's] knowledge that [H] was an 'at risk' student with scant social support and a difficult home life. And, at some point before, around the time of, or after receiving the staff complaints, [respondent] had knowledge that [H] had moved into [M's] home. Yet, instead of following up on the information provided to him from the three instructional assistants, the preponderance of the evidence *600 indicates that [respondent] simply deemed any concerns about [H] and [M] to be unwarranted. Even when one of the staff members returned to him some time later to voice her continuing concerns about [H] and [M], the record shows, more likely than not, that [respondent] took no investigatory actions and simply determined, based on his knowledge and beliefs, that the concerns were meritless. [Respondent's] decision to dismiss the staff members' complaints without any investigation demonstrates an extreme lack of professional judgment and leadership and shows serious and material inattention to his responsibilities as principal of Astoria HS."
(Footnotes omitted.)
The flaw in that reasoning is that it simply states TSPC's legal conclusion based on the facts as TSPC found them, without articulating why that conclusion reasonably follows from those facts. In other words, TSPC does not explain why respondent's inaction in these circumstances constituted a lapse of professional judgment and leadership skills-much less a "substantial deviation" from professional norms. TSPC does not point to any evidence indicating what the relevant standards of professional competency reasonably demanded, or what an educator/administrator, exercising professional judgment and a commitment to the demonstration of leadership skills would or should have done , given the circumstances.[8] In short, TSPC failed to identify the appropriate standard and then measure respondent's conduct against that standard. Instead, TSPC simply *601 assumes that one follows from the other-that the result can be assumed from the existence of the facts themselves. However, for an order to be supported by substantial reason, the agency's opinion must demonstrate the reasoning that leads the agency from the facts to the conclusion. Here, that path is missing a link. Without some explanation of the professional expectations against which respondent's conduct was measured, TSPC's conclusion-that respondent committed gross neglect of duty by substantially deviating from professional standards of competency-does not reasonably follow from the facts. That failure deprives the order of substantial reason. Accordingly, we must reverse and remand TSPC's order for further explanation of its conclusion.
Reversed and remanded.

We generally refer to parties by their designations below. See ORAP 5.15(1). Thus, although the administrator is petitioner on judicial review, we refer to him here as respondent.

Those provisions are set out below.

ORS 342.175(1)(b) and the related Oregon Administrative Rules referenced here-and in the notice of charges-were amended after the events giving rise to this case. Those amendments made no substantive changes to the specific provisions at issue, with one possible exception. As quoted above, OAR 584-020-0025(3)(a) currently refers to "[l]eadership skills"; however, at the time of the alleged conduct in 2003-2004, the rule referred only to "[s]kills." See OAR 584-020-0025(3)(a) (2004 compilation). The parties do not raise any issue with respect to that distinction, nor does it factor into our analysis in this case. Accordingly, we refer to the current versions of the statute and rules in this opinion.

The applicable statute of limitations barred criminal prosecution of M.

TSPC also charged respondent with gross neglect of duty based on other rules-specifically, OAR 584-020-0040(4)(o), as it incorporates OAR 584-020-0035(3)(a) (ethical educator will "[m]aintain the dignity of the profession by respecting and obeying the law, exemplifying personal integrity and honesty"), OAR 584-020-0040(4)(m) ("[f]ailure of a chief administrator to report a violation of [TSPC] standards as required by OAR 584-020-0041"), and OAR 584-020-0040(s) ("[f]ailing to report child abuse pursuant to ORS 419B.010"). The ALJ concluded that TSPC did not prove those charges, and they are not at issue on review.

Although respondent testified that he had discussed the living situation with two school counselors, the district superintendent, and the school's student resource officer, TSPC found the reliability of that testimony questionable, given that respondent had not told TSPC's investigator of those actions; rather, he had told the investigator that he had to search "long and hard to try to even figure out any conversations or remember anything about this incident" and he had only a vague memory of "[M] employing [H] as a nanny back in 2004, but * * * he may have manufactured the memory." Thus, rather than there being "no evidence" that respondent discussed the arrangement with school counselors or others, it appears that TSPC discounted the evidence to the contrary.

TSPC also found that neither Belleque nor MacDonald observed any physical contact between H and M.

We note that the record is almost entirely devoid of discussion regarding the professional principles that might have governed this situation. Hoppes, the district superintendent, testified that the fact that a student was living alone with a teacher "would be very concerning to [him]"; however, he also acknowledged that he was aware of other situations where teachers and students had lived together. Respondent himself testified that complaints of the sort made to him by the staff members would have raised "an absolute huge, red flag" that he would have immediately responded to, but did not elaborate further.
In addition, in a footnote, TSPC references OAR 584-020-0035(1)(c)(D), which states that an "ethical educator" will "[m]aintain an appropriate professional student-teacher relationship by * * *[h]onoring appropriate adult boundaries with students in conduct and conversations at all times." We do not see how that rule provides evidence of a professional standard that respondent-by failing to investigate the possible inappropriate conduct of another teacher-failed to meet; in any event, because it was enacted after the events at issue here, it is of no assistance.