HADLOCK, J.
*370 Licensee, a long time practitioner in the field of speech-language pathology, seeks judicial review of a final order of the Board of Speech Language Pathology and Audiology (the board) revoking her license to practice as a speech-language pathologist.[1] On review, licensee raises six assignments of error. We reject without discussion licensee's second, third, and fourth assignments of error, and write to address her first and fifth assignments. In her first assignment of error, licensee contends that the board's contested case procedure and, specifically, the ways in which the board's executive director participated in the proceedings, violated her "constitutional right to due process." Licensee also contends, in her fifth assignment of error, that the board erred in determining that she had misrepresented her services and that it erred in applying a preponderance of the evidence standard instead of a clear and convincing standard. As explained below, we reject licensee's contentions with respect to both of those assignments of error. And, in light of our resolution of those assignments of error, we also reject licensee's sixth assignment of error, in which she challenges the sanctions *640 imposed by the board.[2] Accordingly, we affirm.
We take the following undisputed historical facts from the board's order. See Coffey v. Board of Geologist Examiners , 348 Or. 494, 496 n.1, 235 P.3d 678 (2010) (where the board's factual findings are not challenged, those findings are the facts for purposes of judicial review).[3] Licensee has been licensed as a speech-language pathologist (SLP) in Oregon since 2009. Before that time, she had been licensed as an SLP in Colorado and Washington. As part of her practice, licensee has used a method called "Integrated Listening *371 Systems (iLS)" with nearly all of her clients. "iLS involves listening to filtered music (usually Mozart) through specialized headphones that contain a bone conductor to vibrate the cranial bones." There is also a physical movement component to iLS. As part of licensee's practice in Oregon, her husband has administered the movement therapy to licensee's clients.
In 2010, the board received a complaint alleging that licensee "exceeded the SLP scope of practice, used a method of therapy that is not professionally recognized, and billed for services that were actually provided by an unlicensed member of [her] family." Sandy Leybold, who was the board's executive director and whose duties included, among other things, conducting and overseeing board investigations, commenced an investigation into the allegations raised in the complaint. As part of that investigation, Leybold interviewed licensee. The investigation also included a review of licensee's client records and consultation with experts. During a telephone interview with Leybold, licensee "acknowledged that she uses iLS with nearly 100 percent of her clients and that [the American Speech-Language Hearing Association (ASHA) ] considered iLS to be experimental."[4]
Late in 2011, while the investigation into the first complaint was ongoing, the board received a second complaint regarding licensee. That complaint alleged that licensee
"violated the speech-language pathology scope of practice, made professional judgments not based on professional best practices, advertised her services deceptively on the internet, used diagnostic treatment methodologies that may be ineffective or harmful, and was not ethical in selling devices to consumers that deliver those methodologies."
The board combined the complaints into a single investigation.
Licensee was a contracted provider with Regence Blue Cross/Blue Shield (Regence). The contract with Regence provided that Regence would pay licensee for "covered *372 services," which included medically necessary speech therapy. The contract excluded from coverage services or procedures that were considered "investigational."
In 2011, Regence began an audit of services for which it had paid licensee. Based on records that Regence received from licensee, Regence's investigator determined that iLS was the primary service that licensee had provided to the clients whose records were part of the audit. The investigator also determined that licensee's treatment methods fell outside of Regence's policy on speech therapy because it considered iLS to be experimental. In her billing to Regence for the clients at issue, however, licensee had listed only "diagnosis code 92506 (speech therapy evaluation) or 92507 (speech therapy)." Regence informed licensee that, on review of her records, it had determined that the methods of treatment she employed were not traditional speech therapy and were, instead, "investigative and experimental" and therefore excluded from coverage. After the audit *641 (including the internal appeal process) was complete, licensee terminated her Regence contract.[5]
In 2012, the board issued a notice of proposed license revocation. Licensee requested a contested case hearing and the hearing was held before an administrative law judge (ALJ) in 2014.[6] A number of witnesses, including Leybold, testified at the hearing. The ALJ issued a proposed order in July 2014 determining that licensee had violated a number of board rules. In the ALJ's view, although it was within the board's discretion to revoke licensee's license and assess the costs of the disciplinary proceedings as a result of the violations, the more appropriate sanction was a one-year license suspension and assessment of costs of the proceedings.
*373 The board issued an amended proposed order that adopted all of the findings of fact set forth in the ALJ's proposed order. It also accepted eight of the conclusions of law from the ALJ's proposed order. However, it rejected part of the ALJ's ninth conclusion of law, which related to, among other things, whether licensee had misrepresented the services she rendered. It also rejected the ALJ's recommendation that licensee's license be suspended because it determined that the "appropriate sanction in this case is revocation of Licensee's SLP license." That amended proposed final order was signed by Leybold.
Licensee filed exceptions to the amended proposed final order. In November 2014, the board issued its final order. In the final order, the board explained that it had considered licensee's exceptions to the amended proposed order but that it did not find any of those exceptions persuasive. It further adopted the amended proposed order in its entirety. Accordingly, the board revoked licensee's SLP license and assessed the costs of the disciplinary proceedings. The final order was signed by the board chair, Price. As noted, licensee seeks judicial review of the board's order.
In her first assignment of error, licensee asserts that the board violated her constitutional due process rights by allowing its executive director, Leybold, "to act as the primary investigator, a fact witness at trial, and the final decision maker." Specifically, licensee points out that Leybold investigated this case, issued a notice of the board's intent to revoke licensee's license, acted as a witness at the hearing before the ALJ, and signed the amended proposed order, which licensee characterizes as acting as a "judge" in the case. In licensee's view, Leybold's role in those various aspects of this case was constitutionally impermissible.
We begin by observing that, as the board correctly points out, one premise at least partially underlying licensee's assignment of error is mistaken. That is, licensee's assertion that Leybold acted as a "final decision-maker" or a "judge" in this case is incorrect. Although Leybold signed the amended proposed order, she was not the final decision-maker in the case. The final order, signed by the board chair, was the action of the entire board. The board considered whether to *374 adopt the amended proposed order and considered but found unpersuasive licensee's exceptions to that proposed order. In the final order, it was the board itself, through its chair, that adopted the amended proposed order and ordered the revocation of licensee's license. In other words, it was not Leybold but, instead, the board, through its chair, that acted as the final decision-maker or "judge" in the case.
Furthermore, to the extent that licensee asserts that it violated her due process rights for Leybold to take part in various *642 aspects of the administrative case, we reject that contention. "Due process demands impartiality on the part of those who function in quasi-judicial capacities." Llewellyn v. Board of Chiropractic Examiners , 119 Or.App. 397, 402, 850 P.2d 411, aff'd , 318 Or. 120, 863 P.2d 469 (1993) (citing Schweiker v. McClure , 456 U.S. 188, 195, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982) ). A party cannot establish a due process violation in administrative proceedings "merely by showing that the same agency has performed the investigative, prosecutorial and adjudicative phases of a contested case." Id . Rather, it is "well established that due process does not require a formal separation of the investigative functions from the adjudicative or decision making functions of an administrative agency, nor does it preclude those who perform the latter from participating in the investigative phase." Fritz v. OSP , 30 Or.App. 1117, 1121, 569 P.2d 654 (1977) (citing Withrow v. Larkin , 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) ). Accordingly, the mere fact that Leybold performed various functions in this case did not violate licensee's due process rights.
Instead, to establish a due-process violation in this context, licensee must demonstrate actual bias on the part of the decision-maker. See Becklin v. Board of Examiners for Engineering , 195 Or.App. 186, 207-08, 97 P.3d 1216 (2004), rev. den. , 338 Or. 16, 107 P.3d 26 (2005). Here, petitioner asserts that she has demonstrated that the board prejudged her case and was, therefore, actually biased. When a "claim of bias is based on prejudgment, the relevant inquiry is whether 'the decision maker has so prejudged the particular matter as to be incapable of determining its merits on the basis of the evidence and arguments presented.' " Klein v. BOLI , 289 Or.App. 507, 551, 410 P.3d 1051 (2017) (quoting *375 Columbia Riverkeeper v.Clatsop County , 267 Or.App. 578, 602, 341 P.3d 790 (2014) ); see also id. (observing that, "in assessing bias, courts have long distinguished between a decision-maker's prejudgment of facts as opposed to preconceptions about law or policy, particularly in the context of quasi-judicial decisions").
Here, licensee has failed to demonstrate actual bias on the part of the board.[7] An extended discussion of licensee's assertions on this point would not benefit the bench, bar, or the public. It suffices to say that she presented no evidence that the members of the board "abdicated their responsibility and duty to find the facts from the evidence" presented or that they "failed to judge whether the facts warranted imposition of authorized sanctions." Llewellyn , 119 Or.App. at 403, 850 P.2d 411. Accordingly, we reject licensee's contention that her due process rights were violated in this case.
We turn next to licensee's fifth assignment of error. In that assignment, licensee asserts that the board erred in determining "in its conclusion of law and opinion No. 9" that she misrepresented her services in this case "by applying a preponderance of the evidence standard instead of a clear and convincing evidence standard." (Boldface omitted.) She also asserts that the board modified the ALJ's finding of fact and, therefore, pursuant to ORS 183.650(4), we must review the record on that issue de novo.
Pursuant to ORS 183.650(3), an "agency conducting a contested case hearing may modify a finding of historical fact made by the administrative law judge assigned from the Office of Administrative Hearings only if the agency determines that there is clear and convincing evidence in the record that the finding was wrong." An ALJ "makes a finding of historical fact if the administrative law judge determines that an event did or did not occur in the past *376 or that a circumstance or status did or did not exist *643 either before the hearing or at the time of the hearing." Id. And, under ORS 183.650(4),
"[n]othwithstanding ORS 19.415(3), if a party seeks judicial review of an agency's modification of a finding of historical fact under subsection (3) of this section, the court shall make an independent finding of the fact in dispute by conducting a review de novo of the record viewed as a whole. If the court decides that the agency erred in modifying the finding of historical fact made by the administrative law judge, the court shall remand the matter to the agency for entry of an order consistent with the court's judgment."
By the terms of the statute, we engage in de novo review only where the agency has modified one of the ALJ's findings of historical fact, that is, the ALJ's determination that a particular event did or did not occur in the past. See WaterWatch of Oregon v. Water Resources Dept. , 268 Or.App. 187, 228, 342 P.3d 712 (2014) (concluding that the court was unable to engage in de novo review under ORS 183.650(4) because the licensee had not identified a historical finding of fact of the ALJ that the agency had modified); Moon v. Government Standards and Practices Comm. , 198 Or.App. 244, 246 n.1, 108 P.3d 112 (2005) (where an assignment of error involves a conclusion of law, not a finding of fact, ORS 183.650(4) is not applicable and the court reviews for errors of law); see also Gienger v. Dept. of State Lands , 230 Or.App. 178, 184-85, 214 P.3d 75 (2009), rev. den. , 348 Or. 13, 227 P.3d 1172 (2010) (explaining that the "question whether Golf Course Creek was a drainage ditch under ORS 196.905(6) and the administrative rules is a legal issue and any modification of the proposed order's conclusion on that issue was not a modification of the ALJ's findings of historical fact").
Here, licensee asserts that the board modified the ALJ's factual findings when it rejected, in part, the ALJ's proposed conclusions relating to the board's allegation that, by using the billing code for speech therapy in her billings to Regence, licensee had misrepresented to Regence the services she provided in violation of OAR 335-005-0015(11).[8] In *377 the analysis of that issue, the ALJ explained that licensee's practice in Oregon heavily emphasized iLS, which she used with nearly all of her clients. Although licensee had provided iLS-which the ALJ had determined was experimental-in conjunction with another therapy, the ALJ found that iLS was central to licensee's SLP practice. Indeed, the ALJ viewed licensee's "repeated declarations of iLS being merely adjunctive to her speech and language therapy" to be "disingenuous, at best." Nonetheless, in the ALJ's view, licensee's use of the billing code for speech therapy did not misrepresent the services she rendered because she provided the iLS while also providing another therapy.
The board did not reject the ALJ's understanding of the historical facts described above. Instead, the board-like the ALJ-accepted that licensee had provided iLS in conjunction with other therapy, and-again like the ALJ-also determined that iLS was central to licensee's practice. The board's analysis departed from the ALJ's at the next step of the analysis, that is, determining the legal significance of those historical facts. The board concluded, in light of its findings, that licensee's billings to Regence did constitute the kind of "misrepresent[ation]" that OAR 335-005-0015(11) prohibits because it falsely suggested that the entirety of licensee's services consisted of covered speech therapy. That conclusion-that licensee's conduct in this case violated OAR 335-005-0015(11) -was a legal issue. See Talbott v. Teacher Standards and Practices Comm. , 260 Or.App. 355, 371, 317 P.3d 347 (2013) ("legal reasoning" based on predicate findings of historical fact "is required to determine whether [a party] violated [a particular administrative rule] by engaging in a * * * knowing misrepresentation"). Thus, the board's modification of the proposed order's conclusion on that issue was not a modification of the ALJ's findings of historical fact, and, contrary to licensee's contention, ORS 183.650(4) is not implicated in this case.
*644 Licensee next asserts that, even if the board did not change a historical finding of fact, the wrong evidentiary standard was applied in this case. Specifically, she asserts that, under Bernard v. Bd. of Dental Examiners , 2 Or.App. 22, 36, 465 P.2d 917 (1970), and *378 Van Gordon v. Ore. State Bd. of Dental Examiners , 52 Or.App. 749, 765, 629 P.2d 848 (1981), misrepresentation or fraud must be demonstrated by clear and convincing evidence but that the board applied only a preponderance standard here.
In Bernard , a dental license revocation case, we stated that "fraud or misrepresentation is never presumed and that even in a civil action the burden is on the person claiming it to establish its existence by clear, satisfactory and convincing evidence." 2 Or.App. at 36, 465 P.2d 917. We concluded that the "rule in license revocation proceedings requires at least this standard." Id. In Van Gordon , in dictum , we reiterated the clear and convincing evidence standard that we had laid out in Bernard . Van Gordon , 52 Or.App. at 765, 629 P.2d 848 ; see Dixon v. Oregon State Board of Nursing , 291 Or.App. 207, 210, 419 P.3d 774 (2018) (discussing Van Gordon and explaining that its statement of the clear and convincing evidence standard was dictum ). However, we recently overruled Bernard , explaining in Dixon that Bernard "does not accurately state the applicable standard of proof in license revocation proceedings governed by the Oregon APA." Dixon , 291 Or.App. at 213, 419 P.3d 774. Instead, the standard of proof that applies "in agency proceedings, including license-related proceedings" is a preponderance standard. Id. In light of Dixon , licensee is incorrect that the agency was required to apply a clear and convincing evidence standard in this case.[9] Accordingly, we reject licensee's fifth assignment of error.
Affirmed.

Throughout this opinion, we refer to Janel Shicor, who is petitioner on review, as "licensee."

Licensee's sixth assignment is based on the arguments raised in her other assignments of error. Petitioner asks that the case be remanded to the board "for further review taking into consideration the Court's rulings." Because, as explained, we reject licensee's first through fifth assignments of error, we also reject her sixth assignment without additional written discussion.

In her reply brief, petitioner asserts that she challenged certain of the board's findings. The historical findings of fact set forth herein are undisputed.

As the board noted in its order, licensee later changed her view on this issue and took the position that iLS was not experimental.

As a result of Regence's determination that the services for which petitioner had billed were not covered, despite having been billed as speech therapy or speech therapy evaluation, petitioner was informed that she needed to reimburse Regence $27,807.26 for the cases involved in the audit. The board found that petitioner had not paid that sum back to Regence at the time of the hearing before the administrative law judge in this case.

Before the hearing, the ALJ had granted, in part, and denied, in part, the board's motion for summary determination. Specifically, the ALJ granted summary determination in favor of the board on the allegation that petitioner failed to comply with the board's record-keeping requirements. That ruling is not at issue on judicial review.

We observe that licensee bases her argument largely on a statement that she contends the board's attorney made during a settlement meeting. Among other problems with her argument, as in Llewellyn , licensee "fail[s] to recognize that the decision-maker in a license revocation proceeding is the Board , not the Board's lawyer ." 119 Or.App. at 403, 850 P.2d 411 (emphasis in original). We also note that, although she represents in her briefs that she "testified" to that statement, licensee did not so testify. Instead, licensee's assertion regarding the board attorney's purported statement to licensee is not part of the evidence but is found in her argument in response to the board's motion for summary determination.

Pursuant to OAR 335-005-0015(11), SLPs
"shall not charge for services not rendered, nor shall they misrepresent in any fashion, services rendered or products dispensed."

Licensee, in her reply brief argues that, even "if the preponderance of the evidence standard applied (which it does not)," there is insufficient evidence to support the board's conclusion that she misrepresented her services to Regence in violation of OAR 335-005-0015(11). We reject that contention without discussion.