Argued and submitted December 1, 2020, affirmed June 16, petition for review denied October 10, 2021 (368 Or 637)

Naina SACHDEV, M. D.,
*Petitioner,*

*v.*

OREGON MEDICAL BOARD,
*Respondent.*

Oregon Medical Board

A172081

494 P3d 1018

Licensee is a medical doctor licensed by the Oregon Medical Board (board) to practice medicine in Oregon. The board alleged that she violated numerous state and federal laws while practicing medicine. After a hearing on those allegations, it entered an order revoking her license. In *Sachdev v. Oregon Medical Board*, 292 Or App 778, 426 P3d 118 (2018), the Court of Appeals reversed that order, concluding that the board failed to provide licensee with adequate notice as to all but one of its allegations. It remanded the case for the board to impose an appropriate sanction on the remaining allegation—that licensee violated an interim suspension order (ISO) by practicing medicine while the board investigated her conduct. Based solely on her violation of the ISO, the board again revoked licensee's license. On her petition for review from that order, licensee argues that (1) the board violated her right to due process by, among other things, declining her request to appear in-person to contest the sanction; (2) the board's order was excessive; and (3) the order was unsupported by substantial evidence or substantial reason. *Held*: Under *Mathews v. Eldridge*, 424 US 319, 333, 96 S Ct 893, 47 L Ed 2d 18 (1976), the board provided licensee all the process that was due; the board's order was not excessive; and the order was supported by substantial evidence and substantial reason.

Affirmed.

Philip A. Talmadge, Washington, argued the cause for petitioner. Also on the briefs were Talmadge/Fitzpatrick, Philip G. Arnold, Washington, and Campiche Arnold PLLC.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Licensee is a medical doctor licensed by the Oregon Medical Board (board) to practice medicine in Oregon. The board alleged that she violated various state and federal laws related to the practice of medicine. It held an extensive hearing on the allegations, after which it entered an order revoking her license, imposing a $10,000 fine, and assessing the costs of the proceedings. She petitioned for review of the board's order. We concluded that, because the board failed to provide her with adequate notice on all but one of its allegations, in violation of ORS 183.415(3), those allegations were not properly before the board and could not be used as a basis to sanction her. *Sachdev v. Oregon Medical Board*, 292 Or App 778, 426 P3d 118 (2018) (*Sachdev I*). We concluded that the only allegation properly before the board was licensee's violation of its interim suspension order (ISO). We thus remanded the case to the board for its consideration of the sole remaining issue—an appropriate sanction for violation of the ISO. *Id.* at 803.

On remand, licensee argued that the board should impose a three-year license suspension, with credit for the period of suspension to which her license had already been subjected. Instead, the board found that licensee's violations of the ISO warranted a permanent revocation of her license to practice medicine. It also imposed a $10,000 civil penalty and assessed the costs of the proceedings against licensee. The license revocation and civil penalty were the same as the board had imposed before *Sachdev I*. However, it reduced the assessed "costs of the proceedings" from $119,836 to $30,000 in light of the reversed allegations.

Licensee again petitions for review, arguing that the board (1) violated her right to due process by failing to give her an opportunity to appear at an in-person hearing, (2) imposed an excessive sanction of license revocation, and (3) imposed a sanction unsupported by substantial evidence and substantial reason. We conclude that licensee was afforded sufficient due process, and that the board's order was supported by substantial evidence and reason. We also conclude that the license revocation was not an excessive sanction. We affirm.

# I. BACKGROUND

We summarized the pertinent factual background concerning the board's investigation of, and resulting complaint against, licensee in *Sachdev I*:

"Licensee practiced 'integrative and functional' medicine, which is an integration of traditional Western medical practice with alternative medicine, and offered cosmetic and medical services at her clinic in Lake Oswego. In December 2011, the board began investigating licensee after receiving a patient complaint. The next year, the board became aware of a federal Drug Enforcement Administration (DEA) controlled substances investigation into licensee's clinic and received a second complaint about her. The board's investigation included concerns that, among other things, licensee improperly dispensed controlled substances, inadequately charted patient care, and provided substandard care to her patients. Unsatisfied by licensee's responses to its concerns, the board asked licensee to stop practicing medicine until it completed its investigation and, on June 7, 2012, licensee agreed to the ISO, which provided that she would withdraw from the practice of medicine.

"As the board continued its investigation, licensee remained involved in the clinic. In her view, informed by the advice of counsel, she had a 'duty to not abandon her patients,' so she hired physicians and staff to continue to provide patient care, and any contact between her and clinic staff or patients was limited to providing 'continuity of care.' The board finished its investigation and provided licensee with a complaint and notice of proposed disciplinary action against her under ORS 677.205."

*Sachdev I*, 292 Or App at 779-80 (footnote omitted).

The board's complaint proposed to take disciplinary action against licensee, alleging numerous violations of ORS 677.190. Licensee was charged with unprofessional or dishonorable conduct, gross or repeated negligence in the practice of medicine, violating the Controlled Substances Act, prescribing controlled substances outside accepted prescribing and recordkeeping standards, and violating a board order (the ISO). The hearing before the administrative law judge (ALJ) spanned 10 days and resulted in a 144-page order. Licensee filed objections that the board considered

but did not sustain. The board adopted the ALJ's proposed order and permanently revoked licensee's license to practice medicine, imposed a $10,000 fine, and assessed the costs of the proceedings. As already mentioned, licensee petitioned this court for review, and we reversed all but the allegation alleging violations of the ISO under ORS 677.190(17). *Id.* at 803. We therefore remanded to allow the board to consider an appropriate sanction for that remaining allegation. *Id.*

On remand, the board's counsel notified licensee that the board would reconsider its sanction for her violation of the ISO, that she would not have an opportunity to appear for that, and that it would issue a proposed order once it made its decision. He also informed licensee that, rather than issuing a new sanction, the board might instead decide to initiate a new disciplinary action and recharge licensee with the allegations that had been reversed due to inadequate notice. In September 2018, licensee's attorney responded to the board's counsel, asserting, among other things, that proceeding without an in-person hearing would violate her right to due process.

After the appellate judgment issued, the board decided to re-sanction licensee on the one remaining allegation, rather than recharge her with those allegations that had been reversed. It did not provide licensee with an in-person hearing, and it did not allow her to personally appear for the meeting at which the sanction was discussed. In May 2019, the board issued a proposed order that would impose a permanent revocation of her license to practice medicine, a $10,000 civil penalty, and an assessment of the costs associated with the proceedings. Licensee objected to that order, arguing that the proposed sanction was "too severe and not appropriate for the offense of violating the Board's [ISO]." She argued that "[a] more appropriate sanction would be suspension for three years with credit for the period of revocation[.]" In addition, licensee's counsel sent a letter to the board, explaining that licensee had made substantial changes that would affect the way in which she would practice medicine, and that she had taken a number of courses to improve her understanding of medical recordkeeping. Attached to that letter were a number

of certificates, which demonstrated that licensee had completed courses related to medical recordkeeping and other practice improvements.

In July 2019, the board issued its final order, rejecting licensee's exceptions and imposing a permanent license revocation, fine, and assessment of costs as a sanction it deemed appropriate for the repeated ISO violations. The board explained that

> "[b]y willfully violating the ISO on repeated occasions, Licensee was not honest with the Board in that she breached the terms of an agreement/Order with the Board that she had committed to comply with. This highlights a disregard for the authority of her licensing board, and an unwillingness on her part to conform her conduct to the requirements of the law. Her conduct also placed her clinic staff into a conflicted situation, in which they knew she had agreed to refrain from practicing medicine, so that they had to decide whether to acquiesce to her continued medical practice and her directed orders and tasks related to patient care or to comply with the express terms of the ISO."

On review, licensee raises the three assignments of error described above: that the board violated her due process rights when it declined her request to appear in-person for discussion of the sanction upon remand, that revocation of her license is an excessive sanction, and that the board's order is not supported by substantial evidence or reason. We reject all three assignments.

## II.   ANALYSIS

### A.   *Due Process*

Licensee first assigns error to the board's procedures, arguing that "the Board violated [her] constitutional right to due process." This assignment does not meet the requirements of ORAP 5.45(3), which provides that each assignment of error is to "identify precisely the legal, procedural, factual, or other ruling that is being challenged." But we understand licensee's first assignment of error to challenge (1) the board's decision not to allow licensee to appear in person when it considered the appropriate sanction for the ISO violations on remand from this court and

(2) its "obvious reconsideration of vacated charges." For the reasons that follow, we reject both due process challenges.

    1.   *Licensee preserved her argument.*

       We begin with the board's contention that licensee did not preserve her due process argument for this petition for review. In general, a party may not assign error to a matter on appeal that was not raised in the lower tribunal. ORAP 5.45(1). "Ultimately, the preservation rule is a practical one, and close calls *** inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009). We require preservation to ensure that the trial court or, as here, the board, had a "chance to consider and rule on" the argument now being made, perhaps avoiding the need for an appeal altogether. *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). Preservation also "ensures fairness to opposing parties" by avoiding surprise, *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011), and it "fosters full development of the record, which aids the [tribunal] in making a decision and the appellate court in reviewing it," *Peeples*, 345 Or at 219-20.

       We conclude that the purposes of preservation were served in this case. Licensee's attorney notified the board, via letter, that licensee wanted to have an in-person hearing before the board reconsidered its sanction. In that letter, he explained licensee's view that for the board to "proceed in her absence is to continue to violate" her civil rights and, further, that she was entitled to due process, "which, at a minimum, requires notice and the right to be heard in any hearing that might restrict or remove her license to practice medicine." The board's attorney responded to licensee's letter on behalf of the board, explaining that, if the board chose to re-sanction her, rather than initiate a new case, it would proceed without a hearing. It is apparent that the board understood licensee to be requesting a contested, in-person, hearing. It then considered and rejected her request. The board cannot be said to have been taken by surprise, misled, or denied opportunities to meet licensee's argument. Licensee preserved her due process argument.

2. *The board provided licensee with sufficient due process.*

Although we agree with licensee that she preserved this assignment of error for review, we nevertheless conclude that the board afforded her all of the process she was due. We review the board's decision for legal error. *Murphy v. Oregon Medical Board*, 270 Or App 621, 622, 348 P3d 1173 (2015). The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states from depriving persons of "life, liberty, or property without due process of law." US Const, Amend XIV, § 1. Both parties agree that licensee's interest in continuing to practice medicine is significant and subject to the protections of the Due Process Clause. Their disagreement focuses on whether licensee was provided with the process she was due before she was deprived of that interest.

We begin by rejecting licensee's argument that analogizes the board's consideration of an appropriate sanction on remand to a court's consideration of an appropriate criminal sentence on remand. It is correct that criminal defendants have a constitutional right to appear in-person for sentencing under Article I, section 11, of the Oregon Constitution and the Fourteenth Amendment. Defendants in felony criminal cases also have a statutory right to be present for sentencing. ORS 137.030(1). But this is not a criminal case and the potential loss of licensee's medical license is not the same as the potential loss of liberty at stake in a sentencing hearing.

Nevertheless, a person's "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Committee v. McGrath*, 341 US 123, 168, 71 S Ct 624, 95 L Ed 817 (1951) (Frankfurter, J., concurring). Government agencies must provide those who are subject to agency adjudication with an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 US 319, 333, 96 S Ct 893, 47 L Ed 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 US 545, 552, 85 S Ct 1187, 14 L Ed 2d 62 (1965)). However, due process is "'not a technical

conception with a fixed content unrelated to time, place and circumstances.'" *Cafeteria Workers v. McElroy*, 367 US 886, 895, 81 S Ct 1743, 6 L Ed 2d 1230 (1961) (quoting *Joint Anti-Fascist Committee*, 341 US at 162 (Frankfurter, J., concurring)). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 US 471, 481, 92 S Ct 2593, 33 L Ed 2d 484 (1972). That is why, under *Mathews*, we balance both the governmental interests and the individual interests to determine whether the administrative procedures that were provided were constitutionally sufficient. 424 US at 335.

To determine how much process was due licensee under *Mathews*, we consider and balance three factors: (1) "the private interest that will be affected by the individual action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The first factor concerns licensee's interest in her professional license and reputation. Without the license, licensee cannot practice medicine in Oregon. ORS 677.080(4). Neither party disputes that point and we, therefore, give significant weight to licensee's interest in her professional license as we conduct our *Mathews* due process analysis. *See Robin v. Teacher Standards and Practices Comm.*, 291 Or App 379, 389, 421 P3d 385, *rev den*, 363 Or 677 (2018) (concluding that a teacher's "professional license and reputation as a teacher" were "significant interests").

The second *Mathews* factor for us to consider in conjunction with the other factors is the risk of an erroneous deprivation of licensee's interest in her license by virtue of the procedures that were used. And as we consider this factor, we also assess the potential value of alternative procedural safeguards that might have been employed. Here, we consider licensee's argument that an in-person, contested hearing on the issue of the sanction would have mitigated the risk of an erroneous deprivation of her interest in her

professional license. *Mathews*, 424 US at 344. *Mathews* is on point. There, the petitioner argued that he should have been afforded an evidentiary hearing before the Social Security Administration discontinued his disability benefits. *Id.* at 330. In discussing the second factor, the Supreme Court explained that "procedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions." *Id.* at 344. "The potential value of an evidentiary hearing, or even oral presentation to the decisionmaker, is substantially less" than in cases where factfinding can be accomplished through "routine, standard, and unbiased" reports, as was the case in *Mathews. Id.* at 344-45; *see also Logsdon v. SAIF*, 181 Or App 317, 323-24, 45 P3d 990 (2002), *aff'd*, 336 Or 349, 84 P3d 119 (2004) (holding that the determination of a workers' compensation claimant's medically stationary date is an issue that does not generally involve credibility or veracity concerns).

It is important to note the key distinction between cases where assessing credibility is important to accurate factfinding and cases where credibility plays a less important role. An in-person hearing would be more important when it is necessary to assess credibility. *See Board of Curators of University of Missouri v. Horowitz*, 435 US 78, 90, 98 S Ct 948, 55 L Ed 2d 124 (1978) (declining to require in-person hearings for academic dismissal cases given the reviewable academic information available to administrators); *Mathews*, 424 US at 343-44 (no hearing required where "issues of witness credibility and veracity" were not central to the agency's decision); *cf. Koskela v. Willamette Industries, Inc.*, 331 Or 362, 380, 15 P3d 548 (2000) ("[W]hen, as here, the decision-maker must resolve factual disputes involving credibility and veracity, due process requires an opportunity for at least some kind of an oral evidentiary hearing.").

Here, licensee argues that "the risk of an erroneous decision is high" without an in-person hearing because "it is impossible to know" whether the board considered the evidence that she submitted and whether the board refamiliarized itself with the facts of her case. But that argument misses the point of the second *Mathews* factor. The risk of an erroneous legal decision exists at every stage of any

proceeding and the Due Process Clause does not function to eliminate that risk. In a due process analysis, we focus on whether the procedures used are likely to lead to incorrect findings of fact, which will, in turn, cause an erroneous decision. In other words, we look to whether the procedures used are adequate for factfinding in a given context. *See Mathews*, 424 US at 334-35 (explaining that the Due Process Clause requires "flexibility" in determining constitutionally sufficient procedures).

Licensee had participated in a 10-day hearing subject to the procedural requirements of Oregon's Administrative Procedures Act. And, on remand, the only issue was the determination of an appropriate sanction for the ISO violations. An in-person hearing was not necessary to ensure accurate factfinding because no additional factfinding was required to determine an appropriate sanction.

Turning to the third *Mathews* factor, we look to the governmental interest in maintaining its existing procedures. As part of that assessment, we consider the additional administrative and fiscal burdens that would be created by requiring additional procedures. In particular, here, we must assess "the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right," an in-person hearing when the sole purpose of the board's meeting is to determine an appropriate sanction. *Id.* at 347. Upon remand, the board considered licensee's sanction during one of its regularly scheduled meetings. It already had the benefit of the 10-day contested case hearing that occurred before the first appeal, and it provided licensee the opportunity to submit additional arguments and evidence, *albeit* in writing, in her formal objection to the board's proposed order. There is evidence that allowing licensee to appear in-person likely would have required resetting the matter for a limited contested-case hearing before an ALJ on the question of sanctions. But as the board points out, even limited contested-case hearings involve substantial time and resources.

Considering the *Mathews* factors, individually and together, we conclude on balance, that the procedures licensee seeks are not constitutionally required. The Due

Process Clause requires government agencies to provide notice and a meaningful opportunity to be heard to those persons whose professional licenses it proposes to sanction. *Trujillo v. Pacific Safety Supply*, 336 Or 349, 366, 84 P3d 119 (2004); *see also Goldberg v. Kelly*, 397 US 254, 267, 90 S Ct 1011, 25 L Ed 2d 287 (1970) (due process requires that a person be heard "'at a meaningful time and in a meaningful manner'" (quoting *Armstrong*, 380 US at 552)). Given that we reached the merits of the ISO violation in *Sachdev I*, the previous 10-day contested case hearing, and the written evidence and arguments licensee was permitted to submit to the board on the issue of an appropriate sanction, licensee was provided all the process that was due to her on remand.

   3.   *There is no evidence that the board considered the reversed charges in arriving at its sanction decision on remand.*

Licensee also argues that the board violated her right to due process by its "obvious consideration" of the charges we reversed in *Sachdev I* for lack of adequate notice. She points to the board's counsel's September 2018 letter, wherein he stated that the board planned to consider those charges when it met to discuss an appropriate sanction. She asserts that the plan to consider the reversed charges demonstrates the board's bias, which, according to licensee, was to punish her for the reversed charges. But the evidence does not establish that the board considered the reversed charges as a basis for the sanction they imposed on remand.

We do not agree with licensee's characterization of the September 2018 letter from the board's counsel to her attorney. In that letter, he wrote that the board would "consider the appropriate sanction to impose on your client for violating the terms of the ISO[.]" And, while he also mentioned the possibility that the board might consider recharging licensee in a new disciplinary action with the charges that had been reversed, he did not say that the board would consider the reversed charges in the context of determining the appropriate sanction for licensee's violation of the ISO. In fact, the board did not recharge licensee. It issued a final order for the ISO violation. And there is no evidence that

the board actually considered the charges that we reversed when we determined the appropriate sanction for the single charge that this court upheld. Instead, the focus of the board's proposed and final orders was on licensee's violations of the ISO.

In further support of her argument that the board impermissibly considered the reversed charges in arriving at a sanction on remand, she asserts that the board is biased against alternative medical providers in general and against her as an alternative medical provider in particular. She argues that the board demonstrated "actual bias," as that term is used in the context of the Due Process Clause, *Columbia Riverkeeper v. Clatsop County*, 267 Or App 578, 602, 341 P3d 790 (2014), and that its bias prevented her from receiving a fair hearing. But the evidence does not establish improper bias on the part of the board against licensee or her medical specialty, and we cannot infer actual bias from conclusory allegations that the board prejudged licensee's case or was otherwise hostile to alternative medical providers. *See Shicor v. Board of Speech Language Path. and Aud.*, 291 Or App 369, 374-75, 420 P3d 638 (2018) (rejecting conclusory arguments of actual bias); *Becklin v. Board of Examiners for Engineering*, 195 Or App 186, 207-08, 97 P3d 1216 (2004), *rev den*, 338 Or 16 (2005) (same). We reject licensee's arguments to the contrary.

B.  *Adequacy of the Board's Order*

We next consider licensee's argument that the board's order lacked substantial evidence and reason. ORS 183.482(8). As a threshold matter, the board argues that we should "reject petitioner's request to review her sanction for substantial evidence or substantial reason." It argues that ORS 183.482(8) applies "differently depending on whether the ruling challenged is legal, discretionary, or factual." In this case, the board contends that, because its sanction ruling was discretionary, our review is restricted to that which is provided by ORS 183.482(8)(b). We do not agree that our review is so limited.

First, the text of ORS 183.482 does not compel the interpretation that the board advances. ORS 183.482(8) states:

"(a)   The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, the court shall:

"(A)   Set aside or modify the order; or

"(B)   Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b)   The court shall remand the order to the agency if the court finds the agency's exercise of discretion to be:

"(A)   Outside the range of discretion delegated to the agency by law;

"(B)   Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C)   Otherwise in violation of a constitutional or statutory provision.

"(c)   The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

The board's argument that subsections (a), (b), and (c) describe exclusive, alternative *methods of review* "depending on whether the ruling challenged is legal, discretionary, or factual," does not survive a plain reading of the statutory text. We read paragraphs (a), (b), and (c) of ORS 183.482(8) to describe the *permissible dispositions* we may employ depending on whether the agency ruling was a violation of law, an abuse of discretion, or a failure of evidence or reason. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (explaining that "text and context remain primary, and must be given primary weight in" determining the legislature's intent).

Second, we have reviewed agency orders for substantial reason, even where the board selected a sanction that was within its authority to impose. *Robin*, 291 Or App at 398. In *Robin*, we explained that, "where the governing statute requires an exercise of the agency's discretion—such as the choice of an appropriate sanction * * *—the agency's explanation must be sufficient to ensure that its decision

is within the range of its discretion and is consistent with agency rules, positions, and practices, rather than *ad hoc* and arbitrary." *Id.* at 398-99.

The board incorrectly argues that its choice of sanction is insulated from substantial evidence and substantial reason review. That is because we must "ensure that the agency [gave] responsible attention to its application of the [governing] statute." *Jenkins v. Board of Parole*, 356 Or 186, 195, 335 P3d 828 (2014) (internal quotation marks omitted). We do that by reviewing the board's decision and selection of sanction to determine whether the board adequately explained its exercise of discretion. An adequate explanation for an agency's exercise of discretion, in this context, includes an explanation for why the order was consistent with the agency's "rules, positions, and practices," and why the order was not "*ad hoc* and arbitrary." *Robin*, 291 Or App at 399.

That an agency has the discretion to execute the law in a particular way does not mean that it can do so without providing an explanation. Agencies must explain to the public why they have executed the law in the manner selected. Substantial reason review allows us to ensure that the agency provides "an explanation connecting the facts of the case and the results reached." *Michaelson/NWDA v. City of Portland*, 296 Or App 248, 259-60, 437 P3d 1215, *rev den*, 365 Or 556 (2019) (citations and internal quotation marks omitted). Without that, the board could impose any sanction for any offense without explanation and without the possibility of review. The text of ORS 183.482 does not support that, and we have not interpreted the statute that way.

Accordingly, we review the board's exercise of discretion to determine whether it is supported by substantial evidence and substantial reason.

C.  *Substantial Evidence and Reason*

Under substantial evidence review, we review the board's decision to determine whether "the record, viewed as a whole, would permit a reasonable person to make" findings necessary to support its disposition. ORS 183.482(8)(c). Included in our review for substantial evidence under ORS

183.482(8)(c) is review for substantial reason. In a contested case, the agency must articulate "the rational connection between the facts and the legal conclusion it draws from them." *Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982).

In challenging the board's explanation for imposing a permanent license revocation, licensee begins by contending that "the ISO was improper in the first place, as the underlying charges of any alleged danger to the public were invalid." But that is not correct. In *Sachdev I*, we did not reach the merits of the underlying allegations. We reversed those allegations due to inadequate notice, and we directed the board that it could not rely on the reversed charges to determine an appropriate sanction. The board was authorized to temporarily suspend licensee's license based on the types of allegations in the board's original complaint, with or without her agreement. ORS 677.205(3). Here, licensee stipulated to the ISO and entered into it voluntarily pending the board's investigation. *Sachdev I*, 292 Or App at 780. That we later reversed the board's order to the extent that it sanctioned licensee on the original allegations does not invalidate the ISO. Our reversals were due to lack of adequate notice. We did not reach any conclusions about the merits of the underlying allegations that we reversed. And, even more importantly, we concluded that the allegation that licensee violated the ISO was properly before the board, and we remanded the matter to the board to impose an appropriate sanction on that basis. We reject her argument that the ISO was improper and, therefore, not a proper basis for a sanction.

Turning now to the merits of licensee's substantial evidence and reason argument, we reiterate here that the only issue on remand was the sanction. Her argument before the board was that a three-year license suspension would be the appropriate sanction, and that, because her license had already been suspended for more than three years, she should be considered as already having completed the sanction. In particular, she urged the board that the continuing medical education materials that she submitted in support of her position showed that she "took the Board's criticisms of her practice to heart" and that she "made substantial

changes in her practice in an effort to provide better care to her patients and avoid the type of conflicts that arose out of her clinic." She argued that the classes she took "had a profound effect on her practice" and pointed to examples such as no longer providing "medical care to family members, employees, or herself" and instituting "an Electronic Medical Records ('EMR') system." On petition for review, licensee argues that "the Board was obligated to explain its severe sanction and address why it rejected" her exceptions to its proposed order. We understand licensee to argue that the board's sanction lacks substantial reason because the board did not address her proposed sanction and explain why it was imposing much the same sanction as it did before we reversed all but the ISO charge.

The substantial reason requirement implicit in ORS 183.842 exists "'both for purposes of meaningful judicial review and to ensure that the agency gives responsible attention to its application of the [governing] statute.'" *Jenkins*, 356 Or at 195 (quoting *Ross*, 294 Or at 370). In contested cases, agencies must articulate "the rational connection between the facts and the legal conclusions it draws from them." *Ross*, 294 Or at 370. And, as mentioned above, where an agency exercises discretion, its "explanation must be sufficient to ensure that its decision is within the range of its discretion and is consistent with agency rules, positions, and practices, rather than *ad hoc* and arbitrary." *Robin*, 291 Or App at 398-99. Even if an agency correctly articulates the relevant factual and legal framework leading to its sanction, it must explain why it tied those facts to its conclusion. *Lockett v. Teacher Standards and Practices Comm.*, 289 Or App 593, 601, 412 P3d 229 (2017). The agency must provide that explanation so that we can determine whether its severe sanction was *ad hoc* or arbitrary. *Id.*

In its order explaining why it was revoking licensee's license for violating its ISO, the board first explained the purpose of interim suspension orders. The board stated that it "has a statutory mission to *** 'protect the public from the practice of medicine by unauthorized or unqualified persons *** and to exercise general supervision over the practice of medicine within this state.'" (Quoting ORS 677.105.) It explained that it "only offers an ISO to withdraw

from practice to a licensee when the Board has a reasonable belief that there is a risk of immediate danger to the public if the licensee continues to practice medicine with an unrestricted license." Further, by violating the ISO on repeated occasions, when other health care providers were available to meet her patients' needs, licensee prevented the board from "effectively exercis[ing] general supervision over [her] practice of medicine and carry[ing] out its mission to protect the public[.]" That conduct, it reasoned, "strikes at the heart of the professional relationship between a licensee and their licensing board, and compels the Board to ask how it is possible to exercise general supervision over such a physician[.]" Finally, it justified its sanction by stating that,

> "[b]y willfully violating the ISO on repeated occasions, Licensee was not honest with the Board in that she breached the terms of an agreement/Order with the Board that she had committed to comply with. This highlights a disregard for the authority of her licensing board, and an unwillingness on her part to conform her conduct to the requirements of the law."

The board's sanction order did, in fact, explain why it was imposing the sanction of license revocation. It further explained that it was reducing the costs assessed against licensee from approximately $119,000 to $30,000 in light of the charges that we had reversed in *Sachdev I.* And while it is true that the board did not specifically say why it chose not to impose the lesser license suspension that licensee suggested, its explanation of why it opted for a permanent revocation was clear and reasonable. It expressed a fundamental concern that licensee's deliberate violations of the board's ISO affirmatively demonstrated her unwillingness to allow the board to monitor her medical practice.

The ISO required licensee to cease practicing medicine while the board investigated the complaints it had received about her. The core purpose served by the ISO was protecting the public from what the board concluded would amount to unsafe medical practice should the investigation ultimately support the complaints the board had received. We understand the board to say that a licensee who intentionally violates an ISO by directing patient care on multiple occasions when that licensee's medical competency is

in question and being investigated poses a danger to public safety simply by virtue of her refusal to cooperate with the board in that process. Her violations of the ISO frustrated the board's ability to fulfill its responsibility to ensure public safety in the context of its mandate to regulate the practice of medicine in this state. Its explanation demonstrated that its decision was neither *ad hoc* nor arbitrary. *Robin*, 291 Or App at 399. Therefore, we cannot say that the board's choice of sanction was unreasonable.

D.  *License Revocation Was Not Excessive.*

Finally, licensee argues that the board's sanction of permanent license revocation was excessive and "the product of its ongoing antipathy toward the type of medicine that [licensee] practices."[1] Although revocation of licensee's license was within the board's range of permissible outcomes, ORS 677.205(2)(d), we have held that, under a totality of the circumstances review, a punishment disproportionate to the offense can constitute an abuse of discretion, *Read v. Oregon Medical Board*, 244 Or App 603, 617, 260 P3d 771 (2011), *rev den*, 351 Or 649 (2012).

The petitioner in *Read* was found to have engaged in unprofessional conduct and to have willfully violated a Medical Board order that required him to submit to a competence evaluation and a psychiatric evaluation, while he was seeking renewal of his active licensure status. *Id.* at 611. The board ordered the licensee's license to be revoked, imposed a $10,000 fine, and assessed the costs of his proceedings, which totaled $14,599.05. *Id.* at 616-17. The board assessed the $10,000 civil penalty because the licensee had been "uncooperative and belligerent" during the disciplinary proceedings. *Id.* at 617.

On review, we noted that the licensee's license was inactive, and we concluded that his behavior "did not have any direct relation to public safety or the care of patients." *Id*. Accordingly, we held that, although the board had the

---

[1] To the extent that licensee is challenging the excessiveness of her sanction based on its "bias" toward alternative medicine providers, we again reject that argument because licensee has not presented evidence of such bias—much less a persuasive argument that it should factor into the "excessiveness" analysis. *See Shicor*, 291 Or App at 374-75.

statutory authority to impose the maximum fine, doing so was a disproportionate penalty for "unprofessional or dishonorable" conduct unrelated to the provision of medical care. *Id.*

Unlike *Read*, licensee's violations of the ISO in this case had everything to do with patient care. Under the totality of the circumstances, the board's revocation of her license was justified. As explained above, the agency acted within its delegated authority, based its decision on substantial evidence, and provided substantial reason for its decision. As it explained, licensee violated the board's trust by practicing medicine after explicitly agreeing not to do so under circumstances where her medical practices were in question. We find the board's explanation quite reasonable—that, by continuing to provide medical care after agreeing to be bound by the board's order not to do so, licensee compromised the board's ability to oversee her practice and to perform its core protective function. License revocation was not an "excessive" sanction for violating the ISO.

Affirmed.